[Civ. No. 22333.   Second Dist., Div. One.   Feb. 3, 1958.]

LENA BUEHLER, Appellant, v. J. B. REILLY et al.,
Respondents.

Hill, Farrer & Burrill and Leon S. Angvire for Appellant.

Fleming, Robbins & Tinsman, C. S. Tinsman and Clay Robbins for Respondents.

WHITE, P. J.—Plaintiff and cross-defendant, Lena Buehler, appeals from a judgment that plaintiff is not entitled to an injunction and that she take nothing; that defendants' and cross-complainants' "right, title and interest in and to said joint and common roadway . . . be quieted for the joint use of cross-complainants and cross-defendant"; that cross-defendant be "forever enjoined and debarred from asserting the claim that said road is owned by cross-defendant"; and that cross-complainants own "an easement over, across and along the following described parcels of land in Tract 4600, as per map recorded in Book 49, page 93, of Maps, Records of Los Angeles County, California: (Description of the driveway along the southerly and easterly boundaries of appellant's Lot 7) for road purposes jointly and in common with cross-defendant; that said easement is appurtenant to Lot 8 of said Tract 4600 and to the portion thereof owned by cross-complainants, *and cross-complainants have an easement in gross over said (driveway) . . . which they may use for the benefit of their residential property, which includes not only said portion of Lot 8 of Tract 4600 but also Lot 3 of Harvey and Lindleys Addition to Whittier, which is owned by cross-complainants,* and that cross-complainants have the right to use said roadway without interference from cross-defendant, and that cross-defendant be forever enjoined and debarred from asserting the claim that said easement and road is owned solely by cross-defendant" and that defendants and cross-complainants recover their costs. (Emphasis added in portion of judgment above quoted.)

Respondents' portion of Lot 8 is directly east of appellant's portion thereof and her Lot 7, upon which she resides. The west line of Lot 7 borders Alta Avenue, which is a dedicated street ending in a cul-de-sac at the northwest corner of appellant's Lot 7 and the southwest corner of respondents' Lot 3. The driveway here in dispute runs from the southwest corner of Lot 7 around the south and east curved boundaries of said Lot 7 to its northeast corner. Respondents' portion of Lot 8 has an area of about 20,000 square feet. In December, 1954, respondents added to their property Lot 3 of Harvey and Lindleys Addition to Whittier, which is over 100,000

square feet in area. The southwest corner of Lot 3 adjoins the north end of Alta Avenue, and the southerly line of Lot 3 coincides with the northerly line of Lots 7 and 8. In 1955, respondents moved their residence from Lot 8, relocated it on Lot 3 about 70 feet north of the north line of Lot 8, and constructed a garage and service building about 25 by 75 feet in area to the east of their new residence location, partially on said Lot 3 and partially on an avocado grove to the east of Lot 8 and Lot 3. Said grove is owned by a closed family corporation controlled by respondents, and it extends from Lot 8 to Beverly Boulevard. Since moving their residence from Lot 8, respondents have constructed a new driveway joining the old one at the southeast corner of appellant's Lot 7, thence around the south and east of respondents' former residence site on Lot 8, into the southeast corner of Lot 3, to their new garage and service building where it is connected with a dirt road across their corporation's avocado grove to Beverly Boulevard, said new driveway then turns, passes south and west of respondents' new residence, curves into the northwesterly portion of said Lot 3, then west and south and connects with the north end of Alta Avenue. The portion of said driveway on said Lot 3 is about 720 feet of curved and graded roadway connecting the new driveway across their Lot 8 with their corporation's dirt road from the southeast corner of their Lot 3 to Beverly and with the north end of Alta Street at the southwest corner of their said Lot 3.

The record does not show the size of the respondents' avocado grove to the east of their said Lots 8 and 3, or the length of the dirt road across said grove from respondents' garage to Beverly. The findings are, however, that said grove is accessible to the driveway here involved ''but there was and is no evidence to show that any person entered the joint and common roadway established by the parties in October of 1936 from the said dirt roadway . . .''

It was stipulated at the trial that the roadway from Lot 8 to Alta Avenue will not be used for ingress to or egress from the avocado grove and will be used ''only for the ingress and egress to their residence property and garage and Lot 8 which is a part thereof, in the manner heretofore used by them, and that an injunction may issue enjoining the use of said roadway from Lot 8 to the Street of Alta for purposes other than the servicing of and ingress and egress to and from their said properties in the manner heretofore used by them''; that ''at the present time Lot 8 does not have any structure thereon; has been landscaped and is being

used primarily for the purpose of a garden, a footpath and a roadway connecting the driveway from the boundary of Mrs. Buehler's property to Lot 3 of Harvey & Lindley's Addition to Whittier''; that since the moving of respondents' house, the driveway across Lots 7 and 8 to said Lot 3 ''has been used by guests, servants, employees, trades people, commercial trucks and vehicles, members of the household, the Reillys and others.''

No issue is raised by the pleadings, at the trial, or on this appeal, as to respondents' ownership of an easement appurtenant to their portion of Lot 8 of Tract 4600. Respondents resided on said portion of Lot 8 from 1928 until 1955, and during that period their only means of ingress and egress was over said easement. The judgment is claimed to be erroneous only with respect to the ''easement in gross . . . for the benefit of (respondents') residential property, which includes . . . Lot 3 of Harvey and Lindleys Addition to Whittier . . .''

In 1922 appellant bought Lot 7 and the southwesterly portion of Lot 8, and in 1924 respondents bought the remainder of Lot 8, Tract 4600. The conveyances to each of them referred to the subdivision map, upon which a strip substantially the same as the one here involved was shown as a driveway, and said conveyances were expressly subject to the rights of the owners of all the lots in said tract, to use said strip as a driveway.

In 1936, appellant discovered that respondents' lawn and curb encroached upon said easement along the common boundary of Lots 7 and 8. On October 10, 1936, they executed three separate documents.

*First,* a quitclaim deed to the respondents and to appellant and her late husband ''as joint owners'' was executed by all the owners of lots in Tract 4600, including the grantees. The quitclaim deed released all their respective ''right, title and interest in and to: A strip of land . . . (description of the portion of the driveway east of Lot 5) . . . said strip of land by endorsement upon said map having been reserved for the perpetual and irrevocable use of the owners of each of the lots shown upon said map and to their heirs and assigns as appurtenant to each of the said lots.''

*Second,* an agreement, reciting that appellant and her late husband were the owners of Lot 7 and a portion of Lot 8; that the respondents were the owners of the remainder of Lot 8; and that the owners of the other lots in Tract 4600 had quitclaimed to appellant, her late husband and respondents their

interest in the driveway; and agreeing that the common boundary line between their respective properties shall be as set out; that each released and quitclaimed to the other a small piece of property, the one upon which the respondents had encroached, to them, and a comparable portion of their property to appellants, "Excepting and reserving therefrom for the joint use of the parties hereto for road purposes the following described strip of land . . ."

*Third,* a document signed by appellant, her late husband, and respondents, reciting that they have established the common boundary line of their respective properties in Tract No. 4600, and

"Whereas, said agreement reserves for road purposes a strip of land and grants unto the respective parties hereto the common use of said strip of land for road purposes, and

"Whereas, the construction of said road upon said strip requires the construction of a retaining wall along the Southerly side thereof, . . . ." By said agreement respondent agreed to and did pay the cost of a retaining wall, and appellant, her late husband, and respondents agreed to and did bear equally the expenses incidental to "the preparation and fulfillment of this agreement and the aforementioned agreement of October 10, 1936, such as fees and charges paid to the Title Company, Attorney, Engineering and Surveying expenses, and Recording fees . . ."

The driveway as so improved was used by appellant, her husband and the respondents from 1936 to 1955, while they resided on Lots 7 and 8 of Tract 4600.

By the quitclaim deed of October 10, 1936, appellant, her husband and respondents became joint owners of the fee title to and the easement over the easterly two-thirds of the driveway strip. The easement theretofore existing over that portion of the driveway was thus merged in the fee. Therefore, as to that portion of the driveway, we need not consider the arguments based upon the original deeds by which the parties acquired Lots 7 and 8 in 1922 and 1924.

From respondents' use of said driveway in connection with Lot 3 since 1955 no grant of an easement can be implied. No claim is or can be made that said driveway is a way of necessity for the enjoyment of Lot 3.

The nature and extent of the respondents' rights in said easterly portion of the driveway is governed by the provisions of the three documents of October 10, 1936, hereinbefore set out, all of which are parts of the same agreement.

That agreement, besides extinguishing the easement created

by the deeds to the parties from their grantors with reference to the map of Tract 4600 changes the boundary between respondents' and appellant's respective properties herein referred to as Lots 8 and 7, respectively, by describing the new boundary and conveying to respondents the fee of the portion of said driveway strip north and east, and to appellant and her husband the fee of the portion south and west of the new line. If, by said agreement the fee of the driveway strip of land had not been transferred to the respective parties, but had been excepted and retained in the joint ownership of the four parties, there would have been no common boundary and their statement therein that they "have established the common boundary line of their respective properties" would be untrue. The words "excepting and reserving . . . the strip of land . . . for road purposes . . ." is a reservation of an easement of right of way, and does not create such an ambiguity in said agreement as to require or authorize the court to consider extrinsic evidence as to the meaning of the written agreement between the parties. This is particularly true, when consideration is also given to the later portion of their written agreement wherein it is said that the agreement "grants unto the respective parties hereto the common use of said strip of land for road purposes." The three documents of October 10, 1936, considered together and in their entirety, clearly indicate the intention to grant the fee title to the land underlying said driveway to the respective parties and to reserve an easement only for their common use.

A written agreement, unless it is ambiguous, must be construed by consideration of its own terms. The meaning and intent thereof is a question of law, and an appellate tribunal is not bound by the trial court's findings and conclusions respecting such intent and meaning. (*Brant* v. *California Dairies, Inc.*, 4 Cal.2d 128, 133 [48 P.2d 13].)

Where, as in the instant action, the agreement to be so construed recites that the parties are owners of adjoining lots and the agreement grants to each a right of way over a strip on each side of their common boundary line, the law of California is well settled that the easements so created are appurtenant to their adjoining properties. (*Hopper* v. *Barnes*, 113 Cal. 636 [45 P. 874] ; *Elliott* v. *McCombs*, 17 Cal. 2d 23, 29 [109 P.2d 329] ; *Wright* v. *Best*, 19 Cal.2d 368, 383 [121 P.2d 702].)

In the instant action, that construction is concurred in by all parties and by the trial judge. However, respondents urged and the court adjudged that, in addition to such ease-

ment appurtenant, respondents are the owners of an easement in gross "for the benefit of" their Lot 3, which was acquired by them some 18 years after the execution of the agreement creating the easement. At the trial the parties stipulated that in 1936 the respondents owned no property in the vicinity of said driveway except their said portion of Lot 8.

A way "is deemed to be incidental or appurtenant to land when it is by right used with the land for its benefit." (Civ. Code, § 662.) The judgment in the instant action that respondents "have an easement in gross . . . for the benefit of their residential property, which includes . . . Lot 3 of Harvey and Lindleys Addition to Whittier . . ." ignores the provision of said section 662 that when an easement is used for the benefit of land it is appurtenant thereto.

The three documents of October 10, 1936, contain no language which can be construed as a grant of an easement in gross or an easement appurtenant to said Lot 3. Respondents, in their brief, urge that while the findings respecting such easement in gross for the benefit of Lot 3 may not be supported by the agreements "on their face," the judge having personally inspected the properties such view is presumed to support the finding and it cannot be disturbed on appeal. We are satisfied that the court's view of the premises in 1956 and all other evidence in the instant action is insufficient to support the finding and conclusion that the parties intended to and did by said writings in 1936 create an easement in gross or an easement "for the benefit of" or appurtenant to property in which neither party then, or for 18 years thereafter, had any interest.

The judgment is reversed and the cause remanded with directions to the court below to make new findings in accordance with the views herein expressed and to render judgment in accordance therewith.

Fourt, J., and Drapeau, J.,* concurred.

A petition for a rehearing was denied March 3, 1958. and respondents' petition for a hearing by the Supreme Court was denied April 2, 1958.

---

*Assigned by Chairman of Judicial Council.