[Civ. No. 22825. Second Dist., Div. One. May 15, 1958.]

FRED E. KEELER et al., Appellants, v. LEON HAKY et al., Respondents.

L. Dean Petty and Jean Wunderlich for Appellants.

John E. Sisson and Guy T. Graves for Respondents.

LILLIE, J.—An action for declaratory relief, injunction and damages was brought by plaintiffs, successors to the grantors and owners in fee of the servient estate, Lot 1, against defendants, successors to the grantees and owners in fee of the dominant estate, Lot 11, and the appurtenant easement thereto, to determine the rights of the parties in the easement created over Lot 1 under a grant deed dated April 17, 1934. The matter was heard before the court sitting without a jury. The trial judge found that the easement was created for the sole use and benefit of the defendants' predecessors in interest and that the exclusive use thereof by defendants was not a violation of the rights of the plaintiffs. From a judgment in favor of defendants, plaintiffs appeal.

The primary question is whether the instrument granting the easement to defendants' predecessors in interest conveyed to them an easement to the exclusion of the owners of the servient tenement.

The deed, among other things, provided: "Whereas, there is on the northerly twenty (20') feet of said first herein described parcel of real property, a private road, or alleyway, extending from the east to west a distance of one hundred forty (140') feet, as shown on the plan hereto annexed and made a part thereof by this reference." After reciting the consideration therefor, it continued: "hereby grant unto said Security First National Bank of Los Angeles, a national banking association, its successors and assigns, the full and free right for it and them, its and their tenants, servants, visitors and licensees, in common with all others having like right, at all times hereafter to and including the 31st day of July, 2027, with or without horses, carts, carriages, motors or other vehicles, for all purposes connected with the use of said grantee's land, to pass and repass along, over and upon said private road or alleyway hereinbefore described. To have

and to hold said easement to the said Security-First National Bank of Los Angeles, a national banking association, its successors and assigns, as appurtenant to its said land herein described.''

Defendants have been and are now using the easement, surfaced with concrete and marked off by painted white lines for parking stalls, as a permanent parking lot for 10 or 11 cars owned by tenants in defendants' apartment building. These stalls have been assigned to defendants' tenants by name and apartment number.

There is no claim of right by prescriptive use. The easement was created by a grant deed and the nature and extent of the respective rights are governed by its terms. ▮ In construing an instrument conveying an easement, the rules applicable to the construction of deeds generally apply. (*Eastman* v. *Piper*, 68 Cal.App. 554 [229 P. 1002].) ▮ If the language is clear and explicit in the conveyance, there is no occasion for the use of parol evidence to show the nature and extent of the rights acquired. ▮ A written agreement, unless it is ambiguous, must be construed by a consideration of its own terms. The meaning and intent thereof is a question of law and the reviewing court is not bound by the trial court's findings and conclusions regarding such intent and meaning. (*Brant* v. *California Dairies, Inc.*, 4 Cal.2d 128 [48 P.2d 13]; *Buehler* v. *Reilly*, 157 Cal.App.2d 338 [321 P.2d 128].)

▮ The language of the grant deed, dated April 17, 1934, is clear and free from ambiguity and uncertainty and does not create such a condition as to require or authorize the court to consider extrinsic evidence as to the meaning of the written agreement between the parties. The terms clearly show that until 2027, the grantees, in common with others having like right, have the unrestricted right to pass and repass over a private alleyway of explicit description and location, for all purposes connected with the use of their land. We cannot hold in line with the trial court's ruling that by the employment of the terms ''full and free'' and ''all purposes'' the use was intended to be exclusive to the grantees and for all purposes connected with their property. The document clearly indicates that the right which is unrestricted, or ''free and full'' is the right to ''pass and repass'' across the easement, and even the extent of this right is limited by the use of others who have the same, or like, right. The phrase ''all purposes'' as used in the instrument does not imply that all rights in

connection with the use of the dominant estate are conveyed, but only the right to pass and repass for all purposes connected with the use of grantees' land. A fair interpretation of the language of the conveyance permits the grantees to pass and repass for all purposes connected with the use of their estate.

Any claim that the deed makes no reservation or exception in favor of the grantors is without merit. First of all, a reservation or exception is stated, and in positive terms, that all others having the same right may also pass and repass. Secondly, there is little question that the grantors retained this right with others, for an easement deed does not "grant" anything to the servient estate since it retains all that which the deed does not give away. (*Pasadena* v. *California-Michigan etc. Co.*, 17 Cal.2d 576 [110 P.2d 983, 133 A.L.R. 1186].)

Obviously, the parties had in mind an "alleyway" or "road" that others might use, but which was to be "private," not dedicated to public use, and which was to be used for moving vehicular traffic. No mention was made of storage of vehicles or a permanent parking lot to be used exclusively by the owners of the dominant estate. Instead, the deed expressly gives the right to "pass and repass," which implies movement and transfer from one place to another, to the grantees in common with all others having a like right.

The extent of a servitude is determined by the terms of the grant creating it. (Civ. Code, § 806.) ▮ Where an easement is founded on a grant, only those interests expressed therein and necessary for its reasonable and proper enjoyment pass from the owner of the fee. (*Pasadena* v. *California-Michigan etc. Co., supra.*) ▮ The interest expressed in the instant deed is only the right to pass and repass for all purposes connected with the use of the grantees' land. If permanent parking were permitted for defendants' tenants the effect would be to make the use exclusive to them. This cannot be implied from the clear language of the deed. In *City of Pasadena* v. *California-Michigan etc. Co.*, 17 Cal.2d 576, at page 578 [110 P.2d 983, 133 A.L.R. 1186], the Supreme Court, speaking of such an implication, said: "Furthermore, an 'exclusive easement' is an unusual interest in land; it has been said to amount almost to a conveyance of the fee. (2 Thompson, Real Property (1939), § 578; Jones, Easements, § 378, p. 302.) No intention to convey such a complete interest can be imputed to the owner of the servient tenement in the absence of a clear indication of such an intention. (See

*Reiver* v. *Voshell,* 18 Del.Ch. 260, 264 [158 A. 366] ; Jones, *supra,* § 379, p. 303.) "

If we are to hold that this easement includes the right to permanently park vehicles thereon, we must find that it is necessarily incident to the right to pass and repass for all purposes connected with defendants' land. This we cannot do. It is obvious that any permanent occupation by way of parking, or otherwise, which excludes the use of plaintiffs and others having a like right to pass and repass, is entirely foreign to the grant. The right to pass and repass conveyed by the deed in the case at bar is not unlike an easement of ingress and egress. The record herein excludes any evidence of the occasional or temporary parking that normally accompanies the movement of vehicles in and out of, or over, a location such as that found in various cases cited by respondents. On the contrary, the undisputed evidence establishes parking of a permanent nature by tenants who live on the dominant estate. Certain tenants have been assigned stalls created on the concrete surface of the easement by painted white lines. The entire area accommodates 10 or 11 cars. As between the tenants and defendants, the right to use parking facilities there is created by lease of an apartment in the building owned by the defendants. Defendants, by nine signs painted on the wall of the plaintiffs' building abutting the easement, reserved this area exclusively for parking for their tenants. The signs read: "Private Parking," "For Tenants Only, Police Tickets Issued to Violators," and "Private Parking, Violators Prosecuted." Clearly, this is not a use compatible with the terms of the grant. It does not constitute a reasonable and proper enjoyment of an easement to pass and repass, and prevents and interferes with the passing and repassing of the vehicles of others, including plaintiffs, who have a like right with defendants.

A similar grant was construed in *Gillespie* v. *Weinburg,* 148 N.Y. 238 [42 N.E. 676], in which the court held that a deed giving the grantee a right to use a specified portion of an adjoining lot as "an alley in common for the purpose of passing and repassing," gives a right to use the alley for passage of vehicles but does not authorize the grantee to erect any permanent structure in the alley. Likewise, the courts in other jurisdictions have refused to construe the right of ingress and egress as embodying the right to park permanently. (*Penn Bowling Recreation Center, Inc.* v. *Hot*

*Shoppes, Inc.*, 179 F.2d 64; *Feld* v. *Young Men's Hebrew Ass'n of Vicksburg*, 208 Miss. 451 [44 So.2d 538].)

Based on the authorities cited and the clear terms of the conveyance, we hold that no exclusive easement was granted and that it did not give defendants the right to use it as a permanent parking lot excluding the plaintiffs from its use.

 The next issue arises out of the trial court's application of the doctrine of estoppel and laches. Max Berlin, defendants' predecessor in interest, started construction of a 36-unit apartment building and garage on Lot 11 in January, 1954. Plaintiffs acquired Lot 1 on January 29, 1954. In May or June of 1954, after construction was completed, Berlin surfaced the easement with concrete and in June or July, 1954, advised plaintiffs that he intended to use it for parking purposes. Plaintiffs objected and a controversy arose. Shortly thereafter, with plaintiffs' permission, Berlin painted the north side of plaintiffs' building in order to improve the appearance of Lot 11; but without the knowledge or permission of plaintiffs he painted nine signs on the wall reading: "Private Parking," "For Tenants Only, Police Tickets Issued to Violators," and "Private Parking, Violators Prosecuted," which signs plaintiffs first discovered in December of 1954. Berlin also painted lines dividing the surface of the easement into parking stalls. Thereafter, in June, July and August, 1954, plaintiffs' attorney and Berlin, and Berlin's partner, had several conversations regarding the use of the area for parking. Negotiations were suggested. During this time, cars continued to park on the easement.

In January, 1955, defendants, as prospective buyers, inspected Lot 11 and observed the signs on the plaintiffs' north wall, the white lines on the concrete surface of the easement and the cars parked thereon. Defendants claimed before the trial court that in reliance on this observation, they purchased Lot 11 on March 8, 1955. However, the record also discloses that the easement deed had been recorded for some years prior, that the deed to Lot 11 given to defendants contained a full description of the easement, and that prior to the consummation of the sale, defendants asked Berlin about parking and he told them they had the right to park in the area. There is no evidence in the record that plaintiffs ever knew that Berlin was a speculator-builder. Plaintiffs did not know defendants, or of them, until several days after March 8, 1955, when they first learned Berlin had sold Lot 11. They did not previously know Lot 11 was for sale nor that defendants or

anyone else were prospective buyers. Plaintiffs did not know of Berlin's sale of Lot 11 to defendants until several days after the sale was consummated, at which time plaintiffs contacted their counsel who thereafter, by telephone, communicated with defendants about the easement, and wrote three letters to defendants beginning May 11, 1955, resulting in this action which was filed October 28, 1955.

The trial court found that defendants had no notice of plaintiffs' claims to the easement; that plaintiffs did nothing to change the physical condition of the easement, brought no action to assert their claims, and filed no notice of lis pendens to notify prospective buyers of the controversy; that defendants relied on the condition they observed and believed they were purchasing Lot 11 and the easement with the right of tenant parking; that plaintiffs, by their silence, induced the defendants to change their position to their detriment and plaintiffs are now estopped to assert their claims.

At the outset, defendants had constructive notice of the nature and extent of the easement from the fact that the easement was of record in the office of the county recorder. Recordation of the easement deed conveyed constructive notice of its terms to defendants. (Civ. Code, § 1213; 17 Cal. Jur.2d, Easements, § 33, p. 140; *Farmer* v. *Ukiah Water Co.,* 56 Cal. 11; *Hohenshell* v. *South Riverside etc. Co.,* 128 Cal. 627 [61 P. 371].)

As to plaintiffs' alleged silence between January, 1955, when defendants first inspected Lot 11, and March 8, 1955, it is clear from the evidence that defendants apparently were not convinced that the appearance of Lot 11 and the easement conveyed the true facts because before they acquired title to the property, they inquired of Berlin if the right of tenant parking was included; to which he replied in the affirmative. It is obvious that it was not alone on the appearance of Lot 11 that the defendants relied.

■ The rule of estoppel by way of silence is discussed by the Supreme Court in the case of *People* v. *Ocean Shore Railroad, Inc.,* 32 Cal.2d 406, at page 421 [196 P.2d 570, 6 A.L.R.2d 1179] : "An estoppel may arise from silence, but only where there is a duty to speak, and where the party on whom such duty rests has an opportunity to speak and, knowing that the circumstances require him to speak, remains silent. (*Merry* v. *Garibaldi,* 48 Cal.App.2d 397, 401 [119 P.2d 768].)" To invoke this rule there must be a duty on

one to speak, an opportunity to do so and the knowledge that circumstances require him to speak.

As to Berlin, plaintiffs immediately objected when they first learned of his proposed use of the area for parking; continued to further protest; and were in the process of considering further negotiations suggested by Berlin when he sold the property. Up to then there was no occasion for plaintiffs to file suit against Berlin. As to defendants Haky, plaintiffs did not know Lot 11 was up for sale, did not know the sale was consummated until several days thereafter when plaintiffs had their counsel communicate with defendants. The defendants, before buying Lot 11, had constructive notice of the easement, received a description thereof with their deed, did not communicate with plaintiffs regarding the easement and elected to take Berlin's word concerning the right to park. If there was any duty on the part of plaintiffs to disclose their claims to the easement, then it must have been one toward a class of unknown persons (prospective buyers of Lot 11). We think such a duty did not exist. It is also clear from the evidence that plaintiffs did not know that the circumstances were such between January, 1955, and March 8, 1955, that might have required them to speak.

Under the authorities cited and the record in this case, we are satisfied that plaintiffs are not estopped to assert their claims nor guilty of laches in bringing this action.

On the issue of damages, this court is bound by the trial judge's finding that defendants obtained no revenues from the parking spaces and that plaintiffs' property had not been damaged.

However, on the matter of injunctive relief, the trial court's refusal to grant an injunction was predicated on its finding that no violation of the easement by defendants had occurred. In holding that the easement is not an exclusive one and that a violation exists, the reviewing court may determine if an injunction will lie. The record discloses a lack of evidence to support a finding of damages, but it is clear that the defendants have and are continuing to over-burden the easement by acts not contemplated by the grant deed. This, in effect, constitutes a trespass and if the owner of the dominant estate is permitted to continue obstructing the easement, the effect will be to take from the owner of the servient estate the fee of the easement by prescriptive use.

In the case of *Danielson* v. *Sykes*, 157 Cal. 686, at page 691 [109 P. 87, 28 L.R.A.N.S. 1024], the Supreme

Court stated: "The rule is that if an obstruction to a private easement is continuous, exclusive, and under claim of right, so that it will eventually destroy the easement by adverse possession thereof, an injunction will be granted against such obstruction, although substantial damage has not yet been caused by the obstruction. In such a case the damage will be substantial when the adverse occupation has extinguished the right of way. This is sufficient to justify the injunction to prevent the continued occupation which would eventually operate to take a right in real property from the true owner. (*Mendelson* v. *McCabe,* 144 Cal. 232 [103 Am.St. Rep. 78, 77 P. 915], and cases there cited.) This case also decides that where such trespasses are of a continuing nature and the damage for each day's obstruction is insignificant, the remedy of successive actions at law for such damages is inadequate, and equity will interpose by injunction."

A similar holding is found in *Bartholomew* v. *Staheli,* 86 Cal.App.2d 844 [195 P.2d 824], in which the court discussed the overburdening of the easement by the owners of the dominant estate and stated, at page 856: "The injunction properly issued to prevent a continuation of unlawful acts which would deprive plaintiffs of full enjoyment of their property rights and to preclude such excessive and unwarranted use of the roadway from ripening into defendants' prescriptive use thereof. (*Vestal* v. *Young,* 147 Cal. 715, 719 [82 P. 381]; *Lindsay-Strathmore Irr. Dist.* v. *Superior Court,* 182 Cal. 315, 327 [187 P. 1056].)"

We hold that an injunction is proper in the case. The judgment is reversed and the cause remanded with directions to issue an injunction as prayed and to make appropriate findings in conformance with this opinion.

White, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied June 11, 1958, and respondents' petition for a hearing by the Supreme Court was denied July 9, 1958. Traynor, J., was of the opinion that the petition should be granted.