259 So.2d 252

Howard MOSS and Helen N. Moss

v.

Clarence Joseph VANCE and Mary J. B. Vance.

6 Div. 908.

Supreme Court of Alabama.

March 9, 1972.

George Witcher, Birmingham, for appellants.

Lawrence B. Clark, Birmingham, for appellees.

BLOODWORTH, Justice.

Appellants Moss (respondents below) appeal from a final decree of the circuit court of Jefferson County, in equity, which enjoined them from maintaining, and ordered them to remove, a fence which they had erected along the boundary line of a driveway easement.

This declaratory judgment action was filed by appellees Vance (complainants below) asking the court to render a judgment declaring that the respondents Moss had erected the fence in violation of complainants' rights under the easement. It sought an order enjoining respondents from maintaining the fence and prayed for an order for its removal.

A cross-bill was filed by respondents Moss seeking a declaration that complainants Vance had wrongfully interfered with the rights of respondents in the easement and seeking an injunction against their blocking the driveway with automobiles.

The final decree granted each side the relief each prayed for, the complainants Vance being enjoined from blocking the driveway, the respondents Moss being enjoined from maintaining the fence and being ordered to remove it.

We have concluded, after a careful consideration of the cause, that the trial court's decree should be reversed as to that part of the decree enjoining respondents Moss from maintaining the fence and ordering them to remove it.

The salient facts of the case are as follows: In 1950, the Mosses (appellants-respondents) moved to 758 Linwood Road in Birmingham, Alabama, lot 26 on the following map, which is incorporated in the opinion for a better understanding of the case.

The owners of lot 25, next door at 744 Linwood Road, were the Wertheimers. A paved concrete driveway was then located on the Wertheimer property. It extended over onto lot 26 (the Moss lot) 1.2 to 1.5 feet for a portion of its length. In 1951, the Mosses and the Wertheimers entered into mutual grants of easement which granted each party cross-easements in the driveway.

The pertinent portion of the grant to the Wertheimers is as follows:

"* * * do hereby grant unto the said Marian E. Wertheimer, her heirs and assigns full and free right and liberty for her and them, her and their tenants, servants, visitors and licensees in common with all other persons having the like right at all times hereafter on foot or in vehicles to pass and repass along the said driveway for all lawful purposes connected with the use and enjoyment of the said premises known as Lot 25."

The Wertheimers granted the Mosses substantially the same rights in the driveway for the purpose of bringing in coal and removing ashes from their house on lot 26.

That same year (1951), the Vances (appellees-complainants) purchased the Wertheimer house and lot with full knowledge of the easements. The testimony indicates that on various occasions the Vances have blocked the Mosses' use of the driveway and deprived them of their use of the cross-easement. However, the testimony of the Vances indicates that these occasions were infrequent, were not intentional, and that on each occasion the blocking vehicle was promptly moved. The Mosses have since built a brick driveway on their property and provided parking space on their own lot so they would not have to park in the street. Then, the Mosses stopped using the driveway.

In December of 1970, the Mosses built a chain link fence between the two lots. The fence does not encroach on the concrete driveway itself, being constructed at the edge of the pavement entirely on the Moss property.

The Vances contend that the fence, impaired or restrained their use of the easement in that, at certain points along the driveway (between the fence and the Vance house), it left only 4″ clearance on each side for their car to pass. This, they say, makes passage impossible at night and difficult in the daytime. They also contend that it prevents their entering and exiting their automobile while parked at these points along the driveway. The Vances also say it renders their use of the alley, at the rear of their lot, "all but impossible."

The Mosses insist that, before erection of their fence, the Vances were trespassing on the Moss lot, in opening their car doors out over the Moss property and in stepping on the Moss property while entering and exiting a car parked in the driveway at these certain points. The Mosses contend that the easement did not grant the right to trespass, and that the express terms of the easement cannot be enlarged upon. The Mosses maintain that a property owner has the inherent right, absent any statutory or contractual restriction, to erect a fence along the boundary line of his property. The Mosses say it may be inconvenient to pass between the house and fence with 4″ clearance on each side, but this is not impossible.

The Vances maintain that the language of the easement is sufficiently broad to give them the right to open their car door over the Mosses' property and step onto their land when entering and exiting a car parked in the driveway at those points where this is necessary. Further, they insist that if there is any doubt as to whether such activity was contemplated by the easement, the easement must be construed in favor of the grantee. The Vances contend that the Mosses' fence for all practical purposes voids their easement. They suggest the Mosses have erected a "spite

fence." From the pictures, the maps introduced into evidence, and the testimony, it appears that only at certain points, between the fence and the house, is there such close clearance as to prevent the Vances from entering or exiting their automobiles. There is ample room to enter or leave an automobile in the driveway at the front of the Vance residence.

On this appeal, appellants Moss raise two contentions. First, they say the court erred in taxing them with the court costs. Second, they say the court erred in enjoining them from maintaining the fence and in ordering them to remove it.

We consider first the assertion of error in assessing costs. Appellants' argument with respect to this contention is that the trial judge ignored the Vances' testimony admitting that they caused the problems arising between the parties, and that he also ignored the "Clean Hands Doctrine."

■ This court has, in consultation, determined that, in view of the result we reach, the court costs in the trial court should be fixed equally against the appellants and the appellees.

The other assignments of error deal with the contention that the decree, in enjoining maintenance of the fence and in ordering its removal, is erroneous. We think there is merit in this contention.

This court has said that, generally, there are only three ways in which an easement, an interest in land, can be created: by deed; by prescription; by adverse user for the statutory period. Kirkland v. Kirkland, 281 Ala. 42, 198 So.2d 771 (1967). Here, we are confronted only with an easement by express grant in writing.

In considering whether the terms of the express grant in this can restrict the landowners' right to construct the fence, we may also look to the map attached to the grant and which was referred to therein. Ford v. Ward, 272 Ala. 235, 130 So.2d 380 (1961). This map was prepared by a surveyor and is substantially the same as the map which we have included in this opinion.

Unless by the terms of the easement they are prohibited from doing so, it would seem the Mosses would have every right to erect a fence on their own property.

This court is committed to the proposition that,

"A landowner has the inherent right, in the absence of any valid statute, or contractual restriction to the contrary, to erect a boundary fence along the division line of his property. (Citations omitted) * * *" Green v. Mutual Steel Company, 268 Ala. 648, 108 So.2d 837 (1959).

In Dolske v. Gormley, 58 Cal.2d 513, 25 Cal.Rptr. 270, 375 P.2d 174 (1962), it was specifically held with reference to easements that,

"* * * the owner of the servient estate may construct a fence along the easement right of way so long as the fence is not placed so as to be inconsistent with the rights of the dominant owner. * * *"

In that case, the easement was a ten-foot strip off the west side of the property of the servient owner. The dominant owner built his house within three inches of the property line. The servient owner constructed a chain link fence along the west boundary of the easement (his westerly property line) and within three inches of the dominant owner's house. Openings were left for access to the dominant owner's garage. The California Supreme Court affirmed that part of the judgment of the trial court which held the fence did not unreasonably impede the use of the easement by the dominant owner. (The judgment was reversed and remanded as to other aspects not here pertinent.)

Our research has disclosed one case in which an express grant in almost identical terms with the grant in the instant case was construed by the California District

Court of Appeal, Second District. It is found in the case of Keeler v. Haky, 160 Cal.App.2d 471, 325 P.2d 648 (1958), (hearing before the California Supreme Court denied), viz:

"* * * 'hearby grant unto said Security First National Bank of Los Angeles, a national banking association, its successors and assigns, the full and free right for it and them, its and their tenants, servants, visitors and licensees, in common with all others having like right, at all times hereafter to and including the 31st day of July, 2027, with or without horses, carts, carriages, motors or other vehicles, for all purposes connected with the use of said grantee's land, to pass and repass along, over and upon said private road or alleyway hereinbefore described. * * *'"

In Keeler v. Haky, the dominant owner was using the easement, surfaced with concrete, and marked off with white lines, as permanent parking for tenants in its apartment building.

Of course, in the instant case, we are not faced with any issue as to whether the easement extends to the right to park on it.

Thus, though the primary question in Keeler v. Haky, supra, was:

"* * * whether the instrument granting the easement to defendants' predecessors in interest conveyed to them an easement to the exclusion of the owners of the servient tenement."

the California court construed the grant in question and reached conclusions which are quite pertinent to the instant case. The court held, viz:

"The language of the grant deed, dated April 17, 1934, is clear and free from ambiguity and uncertainty and does not create such a condition as to require or authorize the court to consider extrinsic evidence as to the meaning of the written agreement between the parties. The terms clearly show that until 2027, the grantees, in common with others having like right, have the unrestricted right to pass and repass over a private alleyway of explicit description and location, for all purposes connected with the use of their land. We cannot hold in line with the trial court's ruling that by the employment of the terms 'full and free' and 'all purposes' the use was intended to be exclusive to the grantees and for all purposes connected with their property. The document clearly indicates that the right which is unrestricted, or 'free and full' is the right to 'pass and repass' across the easement, and even the extent of this right is limited by the use of others who have the same, or like, right. The phrase 'all purposes' as used in the instrument does not imply that all rights in connection with the use of the dominant estate are conveyed, but only the right to pass and repass for all purposes connected with the use of grantees' land. A fair interpretation of the language of the conveyance permits the grantees to pass and repass for all purposes connected with the use of their estate."

■ We agree with the California District Court of Appeal that the language of the grant in that case (the same as in ours) is "clear and free from ambiguity and uncertainty and does not create such a condition as to require or authorize the court to consider extrinsic evidence as to the meaning" of its terms. We think, in the instant case, that the grantees' "right to pass and repass" over this easement (which is described and specifically located by reference to a map attached) for all purposes connected with the use of their land is the plain meaning of the grant.

■ We cannot agree with appellees Vance that their rights extended to opening automobile doors over the Moss property and stepping out onto the Moss property to enter and exit automobiles. A fair interpretation of the grant is that it "permits the grantees to pass and repass." This, in the words of the California court,

means and "implies movement and transfer from one place to another."

Had it been within the contemplation of the parties to the original grant to permit trespasses on the Moss property, to enter and exit automobiles which parked in the driveway, it would seem they would have included such right in the grant. We cannot imply such right from the words of this grant.

■ Query, if the grant had been of a fee simple title, would the Vances have such right? We think not. Surely, we could not interpret the grant in question as encompassing a right which would not exist if the entire fee had been conveyed.

Therefore, we must conclude that under the undisputed facts there was a misapplication of the law to the facts as to that aspect of the decree which enjoined the Mosses from maintaining the fence on their own property and in ordering them to remove it. "Under these circumstances the favorable presumption attending a trial court's finding of facts on disputed facts does not obtain." Bazzell v. Cain, 285 Ala. 661, 235 So.2d 805 (1970).

In view of the conclusions we have reached, there is, in this case, no place for operation of the doctrine that, in case of doubt, a grant will ordinarily be construed in favor of the grantee. See, Anno: "Extent and Reasonableness of Use of Private Way in Exercise of Easement Granted in General Terms." 3 A.L.R.3d 1256, 1262.

Insofar as the decree enjoins the Mosses from maintaining the fence, and orders them to remove it, the decree is reversed and the cause is remanded for entry of a decree in conformity herewith.

Reversed and remanded with directions.

LAWSON, MERRILL, COLEMAN and McCALL, JJ., concur.