Filed 7/24/14  Yamamoto v. Brown CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| KENGO YAMAMOTO et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>MICHAEL BROWN et al.,<br><br>    Defendants and Appellants. | D062910<br><br><br>(Super. Ct. No. 37-2010-00075092-CU-OR-SC) |

APPEALS from a judgment of the Superior Court of San Diego County,

William S. Cannon and Kenneth J. Medel, Judges.  Affirmed in part, reversed in part, and

remanded with instructions.

Higgs, Fletcher & Mack, John Morris and Mark K. Stender for Plaintiffs and

Appellants.

Manning & Kass, Ellrod, Ramirez, Trester, Darin L. Wessel and Christopher R.

Allison for Defendants and Appellants.

Plaintiffs Kengo and Maeolae Yamamoto (together, the Yamamotos) appeal a

portion of the judgment in their declaratory relief action interpreting a private roadway

easement that benefits and burdens their residential property in Chula Vista, California. The Yamamotos contend that the court erred in interpreting the easement to include a right to certain recreational uses. Defendants Michael and Joann Brown (together, the Browns) cross-appeal, contending that the court erred in interpreting the easement to prohibit parking on the roadway. We conclude the court erred in finding that the rights granted by the easement include recreational uses, and to that extent we reverse the judgment. Otherwise, the judgment is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

The Yamamotos, the Browns, Vicente Bianes and Benigne Bianes (together, the Bianeses), and Carolyn Morris own, either directly or through trusts, neighboring residential properties along Fallbrook Court in Chula Vista.[1] Access to the properties is provided by a paved private road. The private road runs across the properties owned by Morris, the Browns, and the Yamamotos. It terminates in a modified hammerhead or "fishtail" shape at the Bianeses' property line.

The private road follows the path of an easement described in the grant deeds to each of the properties. Each of the deeds recites the easement in the same form, with the following language: "An easement and right of way for ingress, egress, public utilities and sewer line purposes over, under, along and across those portions of [the Yamamoto, Brown and Morris properties], lying within the areas delineated and designated thereon

---

[1] The Bianeses were named as defendants and participated in the proceedings below. Morris was also named as a defendant but allowed her default to be taken by the trial court. Neither the Bianeses nor Morris have appeared in this court.

as 'variable width utility, sewer and access easement dedicated thereon.' Said easement and right of way is hereby declared to appurtenant to and for the use and benefit of [the Yamamoto, Brown, Morris, and Bianes properties]." All of the parties are longtime property owners on Fallbrook Court.

In February 2010, the Yamamotos filed a complaint for declaratory relief seeking clarification of the parties' respective rights and obligations regarding the private road, as governed by the neighborhood's declaration of covenants, conditions, restrictions, reservations, and easements (CC&R's). The operative second amended complaint (SAC) alleged that the Browns and Bianeses, or their tenants and invitees, used the private road as a parking area or vehicle storage area in violation of the CC&R's. The SAC further alleged that the Browns and Bianeses, or their tenants and invitees, used the private road for recreational and playground purposes, also in violation of the CC&R's.

The Yamamoto's SAC sought the following declaration: "a. that the Easement Road cannot be used for vehicular parking to the extent that such parking (i) interferes with or impedes vehicular ingress and egress to Plaintiffs' Property, including ingress and egress by emergency vehicles or (ii) constitutes a violation of the CC&R's; [¶] b. that the portion of the Easement Road located on Plaintiffs' Property cannot be used by Defendants and/or their invitees for parking at all; [¶] c. that the Easement Road cannot be used for vehicular storage; and [¶] d. that the Easement Road, including but not limited to the portion of the Easement Road which is located upon Plaintiffs' Property, cannot be used for recreational or playground purposes." The SAC requested an injunction against any use of the private roadway inconsistent with this declaration. The

3

Browns and the Bianeses answered the SAC with general denials and asserted affirmative defenses, including adverse possession, prescriptive easement, unclean hands, and laches.

The court held a half-day bench trial on the parties' claims and defenses. Although the Browns and Bianeses represented to the court that the CC&R's had recently been terminated, the court allowed the Yamamotos' action to proceed on the basis of the easement language. At the outset of the trial, the court explained its tentative ruling based on the parties' trial briefs. The court believed the terms "ingress" and "egress" in the easement were not complicated or unusual. "Ingress" and "egress" mean coming and going across the easement, including children playing and other recreational uses. Parking, however, was not allowed. The court stated that the width of the private road could not accommodate parking, even on one side. The court encouraged the parties to settle in light of its comments. The parties presented argument and requested clarification on various aspects of the court's tentative ruling, recessed for settlement discussions, and reconvened the trial without resolving the matter.

The parties asked the court for a ruling on the admissibility of extrinsic evidence generally to interpret the easement. The court stated that such evidence would be irrelevant because interpretation of the easement was a question of law. The Bianeses' counsel questioned whether the court could determine, as a matter of law, that parking would obstruct the easement. The court responded, "You may put on the evidence that you want. I'm telling you by looking at the size of the street, knowing what emergency vehicles need to have to go up and down the streets, knowing what it takes for city streets and the ordinances for city streets here, no, is the answer. It is not wide enough." After

4

explaining its reasoning further, the court again emphasized, "I'm not going to preclude you from putting on that evidence. I'm only telling you it doesn't make any sense." The parties then informally argued various disputed issues again, including by reference to various potential witnesses and documentary evidence they had planned to present at trial.

Following argument, the Yamamotos' counsel suggested that "we don't need extrinsic evidence, we don't need extrinsic live witnesses, all we need is argumentation on the basis of the documents, the map, the CC&R's and the deeds which incorporate the CC&R's by reference." After further argument, the Browns' counsel referenced various types of extrinsic evidence he would like to present. But he stated, "I'm not going to call [witnesses] down, but, again, that's under the understanding of what the court's rulings and findings have been said in that regard." The Browns' counsel then agreed to move forward simply with attorney argument. The Bianeses' counsel agreed as well.

After a further recess, the court outlined its findings again and announced that the parties had agreed to proceed to argument based on those findings. Each party presented argument. The court also reviewed pictures of the easement, and of similarly narrow streets in the neighborhood, submitted by the Yamamotos and the Browns. At the conclusion of the parties' arguments, the court again explained its findings, which did not deviate substantially from its tentative comments.

Following the trial, the court issued its statement of decision. The court determined it had jurisdiction over the Yamamotos' declaratory relief action and the Yamamotos' claims were not barred by any affirmative defenses. The court found the

5

language of the easement clear and unambiguous and determined that extrinsic evidence would be unhelpful to aid in its interpretation. The court further found that the terms "ingress" and "egress" mean "coming" and "going" and that the relevant rights granted by the easement were limited to those terms. The terms ingress and egress did not include the right to park. Moreover, the right to ingress and egress enjoyed by the parties precludes any parking on the easement area based on the health and safety hazard parking on such a narrow private road would create. The court made this finding "based on the Court's familiarity with the Easement Road in question, its review of photographs included among the Trial Exhibits submitted to the Court, and all parties' assertion that the Easement Road is approximately 24 feet wide (except for the Y-shaped turnaround at the dead-end) . . . ." However, the terms ingress and egress did include the right to engage in recreational activities on the easement, as long as they did not involve placing any structure on the easement. For example, individuals may play soccer on the easement as long as a soccer goal is not erected.

The court entered a judgment, which was later vacated and amended. The amended judgment declared the rights and obligations of the parties regarding the easement, consistent with the court's statement of decision. The amended judgment also enjoined any use of the easement other than for "vehicular and/or pedestrian ingress and egress to their respective properties" and the recreational uses described in the amended judgment.

DISCUSSION

I

" 'An easement is a restricted right to specific, limited, definable use or activity

upon another's property, which right must be *less* than the right of ownership.' [Citation.]

In construing an instrument conveying an easement, the rules applicable to the

construction of deeds generally apply. If the language is clear and explicit in the

conveyance, there is no occasion for the use of parol evidence to show the nature and

extent of the rights acquired. [Citations.] If the language is ambiguous, extrinsic

evidence may be used as an aid to interpretation unless such evidence imparts a meaning

to which the instrument creating the easement is not reasonably susceptible." (*Scruby v.

Vintage Grapevine, Inc.* (1995) 37 Cal.App.4th 697, 702 (*Scruby*); original italics.)

"The instrument, 'unless it is ambiguous, must be construed by a consideration of

its own terms. The meaning and intent thereof is a question of law and the reviewing

court is not bound by the trial court's findings and conclusions regarding such intent and

meaning. [Citations.]' [Citation.]" (*Gray v. McCormick* (2008) 167 Cal.App.4th 1019,

1024.) The threshold question of ambiguity likewise is a question of law that this court

reviews de novo. (*Appleton v. Waessil* (1994) 27 Cal.App.4th 551, 554-555.)

"The land to which an easement is attached is called the dominant tenement [or

estate]; the land upon which a burden or servitude is laid is called the servient tenement

[or estate]." (Civ. Code, § 803.) "The owner of the servient estate may make continued

use of the area the easement covers so long as the use does not 'interfere unreasonably'

with the easement's purpose.' [Citations.] Whether a particular use by the servient owner

7

of land subject to an easement is an unreasonable interference with the rights of the dominant owner is a question of fact for the trier of fact, and its findings based on conflicting evidence are binding on appeal." (*Scruby, supra*, 37 Cal.App.4th at pp. 702-703.) We uphold these findings if they are supported by substantial evidence. (*Thorstrom v. Thorstrom* (2011) 196 Cal.App.4th 1406, 1417 (*Thorstrom*).) " 'In reviewing the evidence, we must resolve all conflicts in favor of the verdict, and indulge in all reasonable and legitimate inferences in order to uphold the verdict.' [Citation.]" (*Ibid.*)

II

In their appeal, the Yamamotos contend the trial court erred as a matter of law in interpreting the easement grant to include recreational activities. "Where the easement is founded upon a grant, as here, only those interests expressed in the grant and those necessarily incident thereto pass from the owner of the fee." (*City of Pasadena v. California-Michigan Land & Water Co.* (1941) 17 Cal.2d 576, 579 (*Pasadena*); see also Civ. Code, § 806.) The question presented here is therefore whether recreational activities fall within the interests expressed in the grant and their necessary incidents. We conclude that recreational activities do not fall within these interests.[2]

---

2       Given the facts and posture of this case, our task is limited to determining the meaning and scope of the rights granted by the easement. We have no occasion to opine on the desirability of recreational activities generally on private roadways in California's residential neighborhoods.

8

The language of the easement here, "[a]n easement and right of way for ingress, egress, public utilities and sewer line purposes over, under, along and across those portions" of the affected properties, is clear and unambiguous. In relevant part, it grants the right to use the easement for ingress and egress. "Ingress" is commonly defined as "[t]he act, or right of, entering." (Black's Law Dict. (5th ed. 1979), p. 703, col. 1.) "Egress" is commonly defined as "the act of going out[.]" (*Id*. at p. 463, col. 1.)[3] The rights of ingress and egress have long been equated with a right of *access* by a property owner to an adjoining public street. (See *Bacich v. Board of Control of California* (1943) 23 Cal.2d 343, 350; see also *Schmidt v. Bank of America, N.A.* (2014) 223 Cal.App.4th 1489, 1500-1501.)

Recreational uses, such as soccer or frisbee, are neither encompassed within the rights of ingress and egress nor are they necessarily incident thereto. A soccer match, for example, is not simply "[t]he act [of] entering" or "[t]he act of going out" as contemplated by the grant. It is an activity that takes place on or around the easement itself. Although the easement may be traversed in order to reach a soccer match, the easement itself may not be part of its playing field. As a further illustration, playing soccer is not necessarily incident to the rights of ingress and egress, since an individual may plainly enter or leave across the easement, and otherwise enjoy its benefits, without

---

3    The current definitions provided by the same source are substantively unchanged from these past definitions provided by the Yamamotos. (See Black's Law Dict. (9th ed. 2009) p. 853, col. 1 [defining "ingress" as "[t]he act of entering" and "[t]he right or ability to enter" and defining "egress" as "[t]he act of going out or leaving" and "[t]he right or ability to leave; a way of exit"; *id.* at p. 593, col. 1].)

playing soccer. While the easement places no restrictions on the *form* of ingress and egress, as the Browns correctly point out, the use of the easement is limited to those activities. Thus, while an individual may hold a soccer ball (or ride a bicycle, skateboard, etc.) while on the easement, he or she must be using the easement for ingress and egress and not recreational activity.

Relying on *Franceschi v. Kuntz* (1967) 253 Cal.App.2d 1041, the Browns argue that a right of way for ingress and egress may be used for all "reasonable" purposes. We disagree. *Franceschi* considered whether a right of way for ingress and egress could be assigned to a third party. (*Id.* at p. 1044.) While *Franceschi* states, "[a] right of way for road purposes granted in broad terms means 'a general right of way capable of use with the dominant tenement for all reasonable purposes[,]' " the court did not consider uses other than ingress and egress. (*Id.* at p. 1045; see also *Laux v. Freed* (1960) 53 Cal.2d 512, 515-516 [considering whether a "right of way over a road" may be used by individuals crossing the servient tenement to hunt commercially on the dominant tenement].) As we have explained, the rights of a dominant tenement extend only to the interests expressed in the grant and any necessary incidents. (See *Pasadena, supra*, 17 Cal.2d at p. 579.) The Browns' reliance on *Danielson v. Sykes* (1910) 157 Cal. 686, 689, is similarly misplaced because that decision did not consider an express easement grant or the recreational uses at issue here.

The Browns further argue that the neighborhood CC&R's support their interpretation of the easement. The CC&R's provide, in relevant part, "[t]hat each grantee of a lot which shares a private driveway, in common with any adjoining or near-

10

by lot or lots, shall grant, one to another, the right of unimpeded ingress and egress over his property, but as provided for by the developer, by means of paved access roads." Even if we were to consider this language, it would not vary our interpretation of the easement at issue. As relevant here, the CC&R's confirm that the rights of ingress and egress are the extent of the grant. The CC&R's reference to a "private driveway" is merely descriptive of the easement and does vary the plain meaning of its terms.

The Browns' additional contention that past use of the easement supports their interpretation relies on evidence that was not received by the court at trial. We therefore decline to consider it. (See *Connolly v. Trabue* (2012) 204 Cal.App.4th 1154, 1166, fn. 5 ["Clearly, citations to their pleadings and to exhibits that were not admitted into evidence at trial do not satisfy the requirement that a party to an appeal cite evidence included in the record of the trial court to support their contentions to an appellate court."; italics omitted]; see also *Conn v. Western Placer Unified School Dist.* (2010) 186 Cal.App.4th 1163, 1170, fn. 5.) Moreover, evidence of past uses does not aid our interpretation of this unambiguous easement in any event since the Browns seek to impart a meaning to the easement to which it is not reasonably susceptible, i.e., that the right of ingress and egress over the easement includes recreational uses of the easement. (See *Buehler v. Oregon-Washington Plywood Corp.* (1976) 17 Cal.3d 520, 526.)

We note that our conclusion relates only to a dominant tenement's ability to engage in recreational activities on the easement, as framed in the Yamamotos' opening brief on appeal. To the extent the Yamamotos contend that a servient tenement may not engage in recreational activities on its own property covered by the easement, the

11

Yamamotos have not supported that claim with reasoned argument or citation to evidence. We therefore consider any such contention waived. (See *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.)

III

In their cross-appeal, the Browns contend the trial court erred in finding that the easement precluded any parking on the private roadway. The right of a dominant tenement to park on the easement is governed by the language of the grant itself. (See *County of Sacramento v. Pacific Gas & Electric Co.* (1987) 193 Cal.App.3d 300, 313; see also *Pasadena, supra*, 17 Cal.2d at p. 579.) The right of a servient tenement to park on its own property covered by the easement depends on whether, as a factual matter, such parking unreasonably interferes with the dominant tenement's right to use the easement. (See *Scruby, supra*, 37 Cal.App.4th at p. 703.) The former is a question of law, which we review de novo in the absence of conflicting extrinsic evidence. (*Gray v. McCormick, supra*, 167 Cal.App.4th at p. 1024.) The latter is a question of fact, which we review for sufficiency of the evidence. (See *Thorstrom, supra*, 196 Cal.App.4th at p. 1417.) We will consider the two questions separately.

A

As we explain above, the easement grant is clear and unambiguous. It includes the right to use the easement for ingress and egress, i.e., the act of entering or going out. Parking, as a stationary activity, is not included. Nor is there any evidence that parking is a necessary incident to the rights of ingress and egress granted by the easement. Contrary to the Brown's contention, the question is not whether the easement "expressly

12

prohibit[s]" parking, but whether the right to park is contained within the easement grant and its necessary incidents. (See *Pasadena, supra*, 17 Cal.2d at p. 579; *County of Sacramento v. Pacific Gas & Electric Co., supra*, 193 Cal.App.3d at p. 313.) We conclude that it is not. (See *Keeler v. Haky* (1958) 160 Cal.App.2d 471, 475-476 [right to pass and repass, akin to ingress and egress, implies "moving vehicular traffic" and "movement and transfer from one place to another," rather than permanent parking].)

*Heath v. Kettenhofen* (1965) 236 Cal.App.2d 197 and *Hucke v. Kader* (1952) 109 Cal.App.2d 224, relied upon by the Browns, are inapposite. In *Heath*, the court considered a general easement " 'for roadway and utilities,' " rather than the more specific grant here. (*Heath, supra*, at p. 200.) In *Hucke*, also cited by the Browns, the court considered an easement created by a subdivision map, rather than an express grant. (*Hucke, supra*, at p. 226.) *Danielson v. Sykes, supra*, 157 Cal. at page 689, is unavailing for the same reason.

The Browns cite the CC&R's reference to a "private driveway," but it is unpersuasive for the reasons discussed above. Likewise, Streets and Highways Code section 5870, subdivision (b), which defines "driveway" in the context of a public street, does not compel a finding that the easement includes parking. Vehicle Code section 490, defining a "private road or driveway," does not mention parking, and the Browns do not explain its application here. We further reject the various out-of-state and secondary authorities cited by the Browns in support of their argument as not based on California law, factually distinguishable, or both.

13

The Browns also contend that their affirmative defenses of prescriptive easement and estoppel should be considered even if the easement grant does not include parking. We disagree. Although pled in their answer, the Browns did not raise these defenses at trial. They cannot now base a claim of error on matters they failed to present to the trial court. (See *Doers v. Golden Gate Bridge Highway and Transportation Dist.* (1979) 23 Cal.3d 180, 184, fn. 1; *Rogers v. County of Los Angeles* (2011) 198 Cal.App.4th 480, 490, fn. 6 ["The fundamental rule that a reviewing court does not consider arguments or theories that could have been but were not raised below 'is especially applicable to the doctrine of estoppel, which includes factual elements that must be established in the trial court.' "].)

We therefore conclude that the court correctly found that the rights granted by the easement do not include the right to park.

B

At trial, the court reviewed photographs of the easement and other narrow private roads in the neighborhood. The parties agreed that the private roadway on the easement was 24 feet in width, except for the modified hammerhead or "fishtail" shape at its terminus. The court further indicated that it was familiar with the private roadway in question. Based on this evidence, the court could reasonably conclude that a servient tenement's use of the easement road for parking, even on its own property, would create a health and safety hazard and thus unreasonably interfere with the rights of ingress and egress enjoyed by the dominant tenements. (See *Scruby, supra*, 37 Cal.App.4th at p. 703; *Thorstrom, supra*, 196 Cal.App.4th at p. 1417.)

14

The Browns claim that the court erred by relying on its prior familiarity with the easement and "improperly prejudging the issue" by commenting on the probable effect of additional testimony on its conclusions. In support of their claim, the Browns cite only the civil form jury instruction, CACI No. 100, requiring the jury to keep an open mind. This is inadequate. " 'Appellate briefs must provide argument and legal authority for the positions taken. "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." ' [Citation.] 'We are not bound to develop appellants' argument for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived.' [Citations.]" (*Cahill v. San Diego Gas and Electric Co., supra*, 194 Cal.App.4th at p. 956.)

The Browns likewise cannot show error by referencing evidence not presented at trial, including testimony from fire officials. We review the sufficiency of the evidence presented at trial, not whether the trial court's judgment would be correct in light of evidence an appellant planned to present. (See *Thorstrom, supra*, 196 Cal.App.4th at p. 1417.) Although the trial court expressed skepticism of the Browns' case, it did not preclude the Browns from presenting evidence. Indeed, the court repeatedly stated that it would listen to the evidence the Browns wished to present. It was the Browns' responsibility to preserve their arguments on appeal by introducing, or attempting to introduce, their evidence.

The Browns contend that the photographs they did present at trial show that fire trucks could easily navigate the road even if parking were permitted on one side. As a

reviewing court, however, we may not reweigh the evidence presented at trial. " ' "When a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination[.]" ' " (*Thorstrom, supra*, 196 Cal.App.4th at p. 1417.) The photographs presented and the parties' agreement that the private roadway was only 24 feet in width constitute sufficient evidence to support the trial court's judgment. (See *ibid.*)

IV

The court entered a corrected amended judgment to remove certain redlines and strikeouts in the original amended judgment. The corrected amended judgment is dated approximately three weeks after the original amended judgment. Although the court did not vacate the original amended judgment, it is plain that the court intended the corrected amended judgment to supersede it. Neither the Browns nor the Yamamotos have identified any substantive differences between the judgments or any significance to the difference in dates. Nonetheless, the Browns contend that the corrected amended judgment was improper because it was not entered nunc pro tunc with the date of the original amended judgment.

The Browns acknowledge that the court has the power to correct clerical mistakes in its judgments. (See Code. Civ. Proc., § 473, subd. (d).) The Browns cite *Kimball Avenue v. Franco* (2008) 162 Cal.App.4th 1224, 1228, for the proposition that the court lacked the power to enter the corrected amended judgment with a later date than the

16

original amended judgment. That case, however, considered whether a court may vacate and reenter a judgment to extend time for a party to file an appeal, not to correct a clerical mistake. (*Id.* at p. 1226.) Similarly, in *Estate of Eckstrom* (1960) 54 Cal.2d 540, 548, the Supreme Court considered whether an error was considered clerical or judicial in nature. While the court referenced the practice of correcting clerical errors through nunc pro tunc orders, the court did not identify error in other corrective orders such as the corrective amended judgment. (*Id.* at p. 544.) The Browns have not alleged any other error in the trial court's corrected amended judgment or provided any further relevant authority supporting their claim of error.

The Browns have not established any error in the court's entry of its corrected amended judgment. The corrected amended judgment is therefore the currently operative judgment.

## DISPOSITION

The portion of the judgment that interprets the easement to include the right to engage in recreational activities is reversed. The trial court is directed to enter a new and different judgment stating that recreational activities are not included in the rights granted

17

by the easement and modifying its injunction accordingly.  The judgment is otherwise

affirmed.  The parties shall bear their own costs on appeal.


HUFFMAN, Acting P. J.

WE CONCUR:


McDONALD, J.


IRION, J.