[No. G039738. Fourth Dist., Div. Three. Oct. 23, 2008.]

DOUGLAS GRAY et al., Plaintiffs, Cross-defendants and Appellants, v. DANIEL McCORMICK et al., Defendants, Cross-complainants and Respondents.

## Counsel

Stradling Yocca Carlson & Rauth and Donald J. Hamman for Plaintiffs, Cross-defendants and Appellants.

Cunningham & Treadwell, Francis J. Cunningham III and David S. Bartelstone for Defendants, Cross-complainants and Respondents.

## Opinion

**MOORE, J.**—Douglas and Hope Gray, on the one hand, and Daniel and Marilyn McCormick, on the other, own neighboring properties in a subdivision of multimillion dollar luxury homes. The Grays hold an exclusive access easement over the property owned by the McCormicks. The Grays contend the McCormicks are precluded from making any use whatsoever of the easement area, and they sued for a judgment to that effect. The McCormicks maintain they are entitled to make any use of the easement area that does not interfere with the Grays' use of the same, and they filed a cross-complaint in furtherance of their position. The trial court ruled in favor of the McCormicks and the Grays appeal.

The express easement in question clearly provides that the easement is for the exclusive use of the owners of the dominant tenement. While as a general rule, the owners of a servient tenement, such as the McCormicks, are entitled

to use the easement area in any manner not inconsistent with the specified use by the owners of the dominant tenement, such as the Grays, in this case, any use of the surface of the easement area, by the owners of the servient tenement, would be inconsistent with the exclusive use by the owners of the dominant tenement. The judgment is reversed in part and affirmed in part as modified herein.

## I

## FACTS

The Grays and the McCormicks own multiacre custom residential properties in upscale Coto de Caza. The Grays own Lot 6 of Tract Map No. 14505, as shown on a subdivision map recorded in book 717, pages 1 et seq. of miscellaneous maps, in the official records of Orange County, California, assessor parcel No. 778-131-03, known as 9 Olympic Way, Coto de Caza. The McCormicks own adjacent Lot 3 of Tract Map No. 14505, as shown on a subdivision map recorded in book 717, pages 1 et seq. of miscellaneous maps, recorded in the official records of Orange County, California, assessor parcel No. 778-131-05, known as 8 Olympic Way, Coto de Caza.

The properties are subject to the "Master Declaration of Covenants, Conditions, Restrictions and Reservation of Easements for Coto de Caza" (capitalization omitted) recorded March 5, 1984, as instrument No. 84-092424 in the official records of Orange County, California (Master CC&R's) and the "Notice of Addition of Territory and Supplemental Declaration of Covenants, Conditions, Restrictions and Reservation of Easements for Coto de Caza (Delegate District No. 22/Tract 14505)" (capitalization omitted) recorded December 9, 1994, as instrument No. 94-0705287 in the official records of Orange County, California (Supplemental CC&R's).

Tract Map No. 14505 denotes certain private streets providing access to the lots shown thereon. The Master CC&R's provide that the various property owners have "nonexclusive appurtenant easements for vehicular, pedestrian and equestrian traffic over all [the] private streets . . . ." Lot A, known as Olympic Way, is the private street that provides access to Lot 3.

Tract Map No. 14505 also denotes a proposed easement across Lot 3, providing Lot 6 with access to Lot A, without which Lot 6 would be landlocked. The easement is 16 feet wide and approximately 90 feet long. The Supplemental CC&R's provide that the easement is an exclusive easement in favor of Lot 6.

The easement area is currently unimproved. However, the McCormicks have been using the easement area for the passage of their horses, and for the

transportation of their rubbish, horse feed and manure, to and from the stables in their backyard, to Lot A. The Grays, who paid $2,995,000 for the unimproved six-acre Lot 6, say they plan to spend several times that amount on the construction of the residence and other improvements, and intend to improve the easement area with a driveway, perimeter walls and landscaping. They object to the McCormicks' continued use of the easement area. The McCormicks object to the Grays' plans to exclude them from use of the easement area and to place walls on it. They say that they designed their landscaping to make continued use of the easement area for the passage of their horses and for the transportation of their rubbish, horse feed and manure.

After commencement of the litigation, the matter was submitted to the court on a joint statement of undisputed facts. The McCormicks argued that the easement was labeled "exclusive" to distinguish it from the other "nonexclusive" easements for roadway purposes, so that the easement would not be available for the use of other owners of properties within the Tract, but that they, as the owners of the servient tenement, would be entitled to use the easement area in any manner not inconsistent with the Grays' access, ingress and egress rights. They also asserted that exclusive easements are not permitted under California law. The Grays, on the other hand, contended that the easement was designated an "exclusive" easement to mean that the Grays could exclude all other persons from the use of the easement area, including specifically the owners of Lot 3. They also emphasized that the Supplemental CC&R's are clear with respect to the exclusivity of the easement and that an exclusive easement, in effect, prohibits the owner of the servient tenement from using the easement area at all.

Judgment was entered in favor of the McCormicks. The judgment provided: "The owners of Lot 3 have the right to use the Easement Area in any way that does not interfere with the [Grays'] Uses. [The McCormicks] and any subsequent owners of Lot 3 are enjoined from using the Easement Area in any way which interferes with the [Grays'] Uses." The Grays appeal.

II

DISCUSSION

A. *Introduction*

■ Generally speaking, " '[a]n easement is a restricted right to specific, limited, definable use or activity upon another's property, which right must be *less* than the right of ownership.' [Citation.]" (*Scruby v. Vintage Grapevine, Inc.* (1995) 37 Cal.App.4th 697, 702 [43 Cal.Rptr.2d 810].) The question here

is the degree of exclusivity of the easement described in the Supplemental CC&R's. "The term 'exclusive' used in the context of servitudes means the right to exclude others. The degree of exclusivity of the rights conferred by an easement . . . is highly variable and includes two aspects: who may be excluded and the uses or area from which they may be excluded. At one extreme, the holder of the easement . . . has no right to exclude anyone from making any use that does not unreasonably interfere with the uses authorized by the servitude. . . . At the other extreme, the holder of the easement . . . has the right to exclude everyone, including the servient owner, from making any use of the land within the easement boundaries." (Rest.3d Property, Servitudes (2000) § 1.2, com. c., p. 14.)

██ "Under section 806 of the Civil Code 'the extent of a servitude is determined by the terms of the grant . . .' . . . ." (*Pasadena v. California-Michigan etc. Co.* (1941) 17 Cal.2d 576, 578 [110 P.2d 983].) "In construing an instrument conveying an easement, the rules applicable to the construction of deeds generally apply." (*Scruby v. Vintage Grapevine, Inc., supra,* 37 Cal.App.4th at p. 702; see also Civ. Code, § 1066 [grants interpreted as contracts].) The instrument, "unless it is ambiguous, must be construed by a consideration of its own terms. The meaning and intent thereof is a question of law and the reviewing court is not bound by the trial court's findings and conclusions regarding such intent and meaning. [Citations.]" (*Keeler v. Haky* (1958) 160 Cal.App.2d 471, 474 [325 P.2d 648].)

These rules concerning the interpretation of an easement contained in a deed apply with equal force to an easement set forth in CC&R's. "The same rules that apply to interpretation of contracts apply to the interpretation of CC&R's. ' "[W]e must independently interpret the provisions of the document. . . ." ' " (*Chee v. Amanda Goldt Property Management* (2006) 143 Cal.App.4th 1360, 1377 [50 Cal.Rptr.3d 40].)

## B. *Easement Language*

Section 12 of the Supplemental CC&R's (section 12) provides: "Lot 6 Access Easement. Declarant hereby reserves for the benefit of Lot 6 of Tract 14505 ('Lot 6') an exclusive easement of access, ingress and egress ('Easement') over that portion of Lot 3 of Tract 14505, more fully described as Easement G on the Final Subdivision Tract Map for Tract . . . 14505 ('Easement Area'). The Easement is created for the benefit of the Owner of Lot 6 for purposes of (a) access, ingress and egress to and from Lot 6 to the private street located on Lot A of Tract 14505 which constitutes a portion of the Association Property; and (b) construction, installation, maintenance and repair of access drive improvements on the Easement Area all in accordance with the provisions of the Master Declaration. Use of the Easement by the

Owner of Lot 6 and such Owner's family, guests, tenants and invitees shall be exclusive and in connection with such use the Owner of Lot 6 shall indemnify, defend and hold the Owner of Lot 3 harmless from any loss, damage or liability resulting from or arising in connection with such use (including without limitation attorneys' fees and costs of court), provided however that such indemnity shall not apply to liability resulting from the negligence or misconduct of the Owner of Lot 3, such Owner's family, guests, tenants or invitees. The cost of improvement and maintenance of the Easement Area shall be the sole responsibility of the Owner of Lot 6."

## C. Analysis

### (1) Language of exclusivity

The McCormicks concede that this language creates an exclusive easement over their property. However, they maintain that even though the easement is exclusive, it nonetheless does not operate to exclude *them* from the easement area. They cite *Pasadena v. California-Michigan etc. Co., supra*, 17 Cal.2d 576, which states: "Where the easement is founded upon a grant . . . only those interests expressed in the grant and those necessarily incident thereto pass from the owner of the fee. The general rule is clearly established that, despite the granting of an easement, the owner of the servient tenement may make any use of the land that does not interfere unreasonably with the easement. [Citations.]" (*Id.* at p. 579.)

 This is indeed the often-repeated general rule. (See, e.g., *Blackmore v. Powell* (2007) 150 Cal.App.4th 1593, 1599 [59 Cal.Rptr.3d 527]; *Scruby v. Vintage Grapevine, Inc., supra*, 37 Cal.App.4th at pp. 702–703.) However, we observe that in stating that the owner of the servient tenement retained limited rights to use the easement area, the court in *Pasadena v. California-Michigan etc. Co., supra*, 17 Cal.2d 576, was construing a grant of a nonexclusive easement—one that contained no exclusivity language whatsoever. (*Id.* at p. 578.) In contrast, where exclusive easements are concerned, the court noted that "an 'exclusive easement' is an unusual interest in land; it has been said to amount almost to a conveyance of the fee. [Citations.] No intention to convey such a complete interest can be imputed to the owner of the servient tenement in the absence of a clear indication of such an intention. [Citations.]" (*Id.* at pp. 578–579; accord, *Mehdizadeh v. Mincer* (1996) 46 Cal.App.4th 1296, 1308 [54 Cal.Rptr.2d 284].) The court confirmed that "[i]t is, of course, possible to draft an instrument . . . which would make the easement exclusive." (*Pasadena v. California-Michigan etc. Co., supra*, 17 Cal.2d at p. 581.) However, it concluded that "the very general language used in the instrument under consideration [could not] be given any such effect." (*Ibid.*)

The question is whether the language of section 12 of the Supplemental CC&R's clearly expresses the intention that the use of the easement area shall be exclusive to the owners of Lot 6, in the sense of excluding all other owners of property in the subdivision, including the owners of Lot 3. We see that it does.

Section 12 expressly defines the easement as an "exclusive easement of access, ingress and egress." It specifically states that "[t]he Easement is created for the benefit of the Owner of Lot 6 . . . ." It emphasizes that the "[u]se of the Easement by the Owner of Lot 6 and such Owner's family, guests, tenants and invitees shall be exclusive . . . ." In other words, the provision repeatedly uses language of exclusivity. It clearly states that the "[u]se" by the owner of Lot 6 "shall be exclusive."

In addition to the language of exclusivity, section 12 imposes upon the owners of Lot 6 the obligations of the "construction, installation, maintenance and repair of access drive improvements" and the burden of all costs associated with the improvement and maintenance of the easement area. So, the owners of Lot 6 must not only improve the easement area, they must also shoulder all costs of the maintenance of it. It is inconceivable that the owners of a multimillion dollar property who build out 90 feet of access drive improvements would be expected to share that drive with a neighbor whose property abuts the street and to bear the costs of cleaning up the horse droppings and hay scatterings associated with that neighbor's use of the easement area.

The exclusivity of the easement is underscored by the indemnification obligation contained in section 12. Section 12 requires the owners of Lot 6 to defend, indemnify, and hold harmless the owners of Lot 3 from any liability, loss, or damage resulting from the exclusive use of the easement area by the owners of Lot 6. This indemnification obligation makes sense because the owners of Lot 3 have no right to use the easement area.

The McCormicks see it differently. They emphasize the portion of section 12 that makes the indemnification obligation inapplicable to liability arising out of the misconduct or negligence of the owners of Lot 3. According to the McCormicks, this language proves that the owners of Lot 3 are entitled to use the easement area—because the indemnification obligation does not extend to liability arising out of acts the owners of Lot 3 undertake on the easement area. But this is not quite what section 12 says. The indemnification obligation expressed therein does not address acts performed on the easement area. Rather, it pertains to liabilities arising from the misconduct or negligence of the owners of Lot 3, without regard to where the acts of misconduct or negligence take place. Misconduct or negligence in the use of the portions of

Lot 3 immediately adjacent to the easement area could give rise to liability, loss or damage affecting the easement area.

The McCormicks insist that the language of section 12, despite labeling the easement "exclusive," gives them the right to all uses of the easement area that are not inconsistent with the Grays' access rights. In support of their position, they cite *City of Los Angeles v. Igna* (1962) 208 Cal.App.2d 338 [25 Cal.Rptr. 247], relied upon by the trial court in this matter.

In *Igna*, the city and its department of water and power (collectively, the city) acquired, through two similar deeds, an easement for the purpose of power transmission. (*City of Los Angeles v. Igna, supra*, 208 Cal.App.2d at p. 339.) The deeds conveyed " '*exclusive* easements and rights of way . . .' (emphasis added)" for the construction and maintenance of " 'poles, towers, wires, cables, and/or any other structures . . . together with the right and easement for roads, ingress, egress and other convenient purposes . . . and the right and easement to construct, . . . maintain and operate same and to clear and keep said real property free from explosives, buildings, structures, brush and natural wood growth, and inflammable materials . . . in, under, upon, over and across' " the easement area. (*Id.* at p. 340.)

While the deeds used the word "exclusive" in describing the easements, they also contained extensive reservations in favor of the owner of the servient tenement. (*City of Los Angeles v. Igna, supra*, 208 Cal.App.2d at p. 340.) The deeds contained reservation clauses " 'excepting and reserving' " from the grant " 'only such grazing, agricultural and mineral rights and *the right to* maintain, cultivate, *use*, plant, and replant said real property . . . and erect non-inflammable fences upon said real property, as will not interfere with or prohibit the free and complete use and enjoyment by grantee . . . of the rights or easements hereby granted, provided, however, that no building, inflammable fence, other structure, material or explosive . . . shall be placed . . . upon any portion of the above described real property by grantor . . . .' " (*Ibid.*, italics added and omitted.)

A dispute arose as to the extent of the rights of the owner of the servient tenement to use the easement area. (*City of Los Angeles v. Igna, supra*, 208 Cal.App.2d at p. 339.) The owner of the servient tenement operated a trailer park thereon. The city sought to quiet title to the easement area and to obtain injunctive relief to exclude all uses of the easement area other than agricultural and mineral uses. (*Ibid.*) The trial court granted relief, ordering the owner of the servient tenement to remove certain obstructions within the boundaries of the easement area (*id.* at p. 340), and to refrain " 'from conducting business, commercial, industrial, or residential activities' " on the easement area except to the extent reserved in the deeds (*id.* at p. 341).

The appellate court in *Igna* affirmed the judgment with modifications. (*City of Los Angeles v. Igna, supra*, 208 Cal.App.2d at pp. 341–342.) It held that "[t]he judgment must be modified so as to exclude only those uses by the servient owner which [were] shown to be inconsistent with the rights granted under the easement or which [interfered] with those rights." (*Id.* at p. 342.)

The McCormicks contend that *City of Los Angeles v. Igna, supra*, 208 Cal.App.2d 338, proves their position—that they are entitled to use the easement area in any manner not inconsistent with the Grays' access rights. As they see it, the language in the deeds in *Igna* was "strikingly similar" to the language used in the Supplemental CC&R's pertaining to the easement at issue before us. We disagree completely.

The language of section 12 of the Supplemental CC&R's labels the interest in question an "exclusive easement," as did the language of the deeds in *Igna*. (*City of Los Angeles v. Igna, supra*, 208 Cal.App.2d at p. 340.) However, the language of section 12 also specifically states that the use of the easement by the owners of Lot 6 "shall be exclusive." The deeds in *Igna* contained no such qualifying language. (208 Cal.App.2d at p. 340.) To the contrary, the deeds contained extensive reservations in favor of the owner of the servient tenement. The language of the deeds reserved unto the owner of the servient tenement not only agricultural and mineral uses, as the city alleged, but other uses as well. (*Ibid.*) Specifically, the owner of the servient tenement reserved " 'the right to . . . *use* . . . said real property . . . as will not interfere with or prohibit the free and complete use and enjoyment by grantee . . . of the rights or easements hereby granted . . . .' (Emphasis added.)" (*Ibid.*) The *Igna* court correctly construed this language as permitting the owner of the servient tenement to use the easement area in all ways not inconsistent with the rights granted in favor of the owner of the dominant tenement. (*City of Los Angeles v. Igna, supra*, 208 Cal.App.2d at p. 342.)

Section 12 of the Supplemental CC&R's however, contains no express reservation in favor of the owners of Lot 3. The language of section 12 is not, as the McCormicks assert, "strikingly similar" to the language of the *Igna* deeds. Rather, it is in stark contrast thereto. The language of the *Igna* deeds shows without a doubt that the owner of the servient tenement was not intended to be excluded from all use of the easement area. Consequently, the easement in question was not completely exclusive, since there was no expression of intent that the easement area be for the sole use of the owner of the dominant tenement to the exclusion of the owner of the servient tenement. (*Pasadena v. California-Michigan etc. Co., supra*, 17 Cal.2d at pp. 578–579.) In short, the language of the *Igna* deeds did not meet the exclusivity test of

*Pasadena v. California-Michigan etc. Co., supra*, 17 Cal.2d 576. The language of section 12 of the Supplemental CC&R's does.

### (2) *Exclusive easements are not prohibited under California law*

Language interpretation aside, the McCormicks contend that an exclusive easement that bars the owners of the servient tenement from using the easement area is prohibited under California law, because it would in effect grant the owners of the dominant tenement fee ownership over the easement area. They are in error. *Pasadena v. California-Michigan etc. Co., supra*, 17 Cal.2d 576, as we have seen, provides that an express exclusive easement may be created by an instrument clearly stating the intention that the easement be exclusive. (*Id.* at pp. 578–579, 581.) Exclusive easements may be created in other ways as well. In the prescriptive easement context, it has been stated that "[t]here are some circumstances in which the grant of an exclusive easement, which resembles or is nearly the equivalent of a fee interest, can be justified." (*Mehdizadeh v. Mincer, supra*, 46 Cal.App.4th at p. 1306.) As we shall show, while exclusive easements that exclude even the owners of the servient tenement from the easement area may be less common than nonexclusive easements, they do nonetheless arise from time to time and have been held to be valid and enforceable under California law.

In *Blackmore v. Powell, supra*, 150 Cal.App.4th 1593, cited by the Grays, the court construed an express easement "for 'parking and garage purposes' over a defined area" on the servient tenement. (*Id.* at p. 1597.) It held that the construction by the owner of the dominant tenement of a two-car garage on a portion of the easement area was within the scope of the easement and that the owner of the dominant tenement was entitled to the exclusive use of the garage. (*Id.* at pp. 1599, 1606.) The appellate court agreed with the trial court's conclusion "that [the owner of the dominant tenement] was entitled to exclusive use of the garage as 'a necessary incident' of the easement, reasoning that a shared garage would generate disputes about allocation of parking spaces, security, and maintenance costs" and with its "determination that nonexclusive use of the garage would interfere unreasonably with [the] rights [of the owners of the dominant tenement]. [Citation.]" (*Id.* at p. 1599.)

The easement language in *Blackmore v. Powell, supra*, 150 Cal.App.4th 1593, was not nearly as explicit as the language in the case before us. In fact, there is no indication in the *Blackmore* decision that the deed contained any language at all about exclusivity. Rather, the exclusivity was simply implied. Or, rather, the court logically reasoned that it made no sense to construe a garage as being for anything other than exclusive use.

In the case before us, on the other hand, section 12 of the Supplemental CC&R's expressly provides that the "[u]se of the Easement . . . shall be exclusive" to the owners of Lot 6. Furthermore, the sharing of improvements over an area only 16 feet wide would prompt disputes over the passage of vehicles, and/or vehicles and horses, and create a source of chronic aggravation for the owners of Lot 6, who would be left perpetually cleaning up after the owners of Lot 3. This cannot have been the intent of the subdividers of a tract of land for multimillion dollar custom luxury homes. Indeed, "[t]he amount of consideration paid for the interest conveyed is of considerable importance in construing the deed. [Citation.]" (*Warren v. Atchison, T. & S. F. Ry. Co.* (1971) 19 Cal.App.3d 24, 35 [96 Cal.Rptr. 317].)

*Blackmore v. Powell, supra,* 150 Cal.App.4th 1593, while an express easement case, was not a case where the governing instrument used exclusivity language, even though the court construed the easement as granting certain exclusive rights, by necessity. *City of Los Angeles v. Igna, supra,* 208 Cal.App.2d 338, also an express easement case, used exclusivity language, but nonetheless specifically reserved extensive rights in the owner of the servient tenement. The parties have cited no case comparable to the one before us, dealing with what is clearly an express exclusive easement. However, the creation of valid exclusive uses of the property of another is seen in other contexts.

For example, an exclusive easement was upheld in *Otay Water Dist. v. Beckwith* (1991) 1 Cal.App.4th 1041 [3 Cal.Rptr.2d 223]. There, a water district acquired property pursuant to a deed that contained an overly inclusive legal description. That is to say, the grantor purported to convey more property than it owned, unbeknownst to the water district. The result was that the water district unwittingly built a reservoir on property it did not own. (*Id.* at pp. 1044–1045.) More than 20 years later, the water district learned that the reservoir occupied 1.68 acres of property that belonged to another. (*Id.* at p. 1045.) The water district brought a quiet title action, claiming a prescriptive easement. (*Id.* at p. 1044.) The trial court granted an exclusive prescriptive easement in favor of the water district. (*Id.* at p. 1045, fn. 2.) The appellate court affirmed. (*Id.* at p. 1044.)

The appellate court stated: "Contrary to [the servient tenement owner's] arguments, however, an exclusive easement is not always 'tantamount to a fee estate.' The easement granted by the court here, for example, was significantly less than a fee title. The court granted [the water district] an easement consistent with its historical use, restricting [its] use of the property for reservoir purposes only and prohibiting [the water district] from increasing the burden placed upon the servient estates. If [the water district] stops using the property as a reservoir or increases the burden on [the servient tenement, the

water district's] easement can be taken away. Such a restricted use is not the same as a fee interest." (*Otay Water Dist. v. Beckwith, supra*, 1 Cal.App.4th at p. 1048.)

The practical effect of the exclusive easement in *Otay Water Dist. v. Beckwith, supra*, 1 Cal.App.4th 1041, was to completely exclude the owner of the servient tenement from the use of 1.68 acres of his property. And while the easement was not tantamount to fee title because the water district could only use it for reservoir purposes and the easement theoretically could be lost, this was likely little consolation to the owner of the servient tenement.

In the case before us, to construe section 12 of the Supplemental CC&R's as creating an exclusive right of use in the owners of Lot 6, would no more create a fee ownership interest in the owners of the dominant tenement than did the granting of the exclusive prescriptive easement in *Otay Water Dist. v. Beckwith, supra*, 1 Cal.App.4th 1041. In *Otay*, the owner of the dominant tenement had not acquired a fee interest in the servient tenement; rather, the use of the servient tenement was limited to reservoir purposes, not all conceivable uses of the property. Here, the owners of Lot 6 have not acquired fee title to the easement area; rather, their use of the easement area is limited to access, ingress and egress purposes, not all conceivable uses of the property. In the case before us, however, the exclusive easement is an express easement of record and was known to the McCormicks at the time they purchased their property.

An exclusive use was also granted to neighboring property owners in *Hirshfield v. Schwartz* (2001) 91 Cal.App.4th 749 [110 Cal.Rptr.2d 861]. In that case, the boundary line between two residential properties in Bel-Air had been mistaken for many years and the yards of the two properties had been extensively improved in reliance thereon. Eventually, the parties learned that the boundary line was not where they had believed, each one having made use of a portion of the other's property. The plaintiffs brought suit, seeking to quiet title to one 32.5-square-foot triangle of land and one 217-square-foot triangle of land. The defendants had placed a block wall and certain landscaping on the smaller parcel. They had improved the larger parcel with a portion of a sand trap, extensive underground electrical and water lines, several motors to provide circulation for waterfalls and a swimming pool, and an underground iron and concrete enclosure housing one of the motors. (*Id.* at pp. 755–756.)

The trial court in *Hirshfield v. Schwartz, supra*, 91 Cal.App.4th 749, exercised its equitable powers to grant relief in the form of a judgment for what it termed an exclusive easement, giving the defendants the exclusive right to use the property in question, until such time as they sold their

property or ceased residing thereon. (*Id.* at pp. 757, 764.) The appellate court affirmed. (*Id.* at p. 772.) It noted, with respect to the law of prescriptive easements, that "exclusive easements, while rare, are possible [citation] . . . ." (*Id.* at p. 769, fn. 11.) However, it also stated that the judgment did not violate the law of prescriptive easements, because the right of exclusive use created by the judgment was not in reality a prescriptive easement. Rather, the trial court had created the right of exclusive use through the employment of its equitable powers, to grant affirmative relief to an encroacher. (*Id.* at pp. 754–755.)

Inasmuch as *Hirshfield v. Schwartz, supra*, 91 Cal.App.4th 749, did not arise in the context of an express exclusive easement, it offers no assistance in interpreting the scope of the easement in question. It does, however, help dispel the notion that the exclusive use of the property of another is prohibited under California law, as being tantamount to the taking of fee title by a neighboring property owner.

### (3) *Conclusion*

■ The exclusive use of a defined area of the servient tenement by the owners of the dominant tenement is not prohibited under California law. In this case, the language of the instrument by which the easement was created, section 12 of the Supplemental CC&R's, clearly expresses an intention that the use of the easement area be exclusive to the owners of Lot 6, at least as to the surface thereof. It is, therefore, sufficient to create an exclusive easement under California law. (*Pasadena v. California-Michigan etc. Co., supra*, 17 Cal.2d 578–579.) A question remains as to whether there is any conceivable use of the subsurface of, or the air rights above, the easement area that would be consistent with the intended exclusive use of the surface of the easement area. That is an issue that the parties have not addressed.

The judgment is affirmed to the extent that it enjoins the owners of Lot 3 from using the easement area in any way which interferes with the use of the easement area by the owners of Lot 6, and to the extent that it orders the McCormicks to remove certain encroachments from the easement area. However, the judgment must be modified to clarify that any use of the surface of the easement area by the owners of Lot 3 is inconsistent with the exclusive use granted to the owners of Lot 6. The judgment is reversed to the extent that it permits the owners of Lot 3 to use the surface of the easement area in any manner. The owners of Lot 3 are precluded from making any use of the surface of the easement area.

## III

## DISPOSITION

The judgment is reversed in part and affirmed in part as modified. The Grays shall recover their costs on appeal.

Sills, P. J., and Rylaarsdam, J., concurred.

Respondents' petition for review by the Supreme Court was denied January 14, 2009, S168681. George, C. J., did not participate therein.