Filed 8/28/20  Valles v. Kim CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| RUDY E. VALLES et al., | B296274 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC642256) |
| v. | |
| SAMIL KIM et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michelle Williams Court, Judge.  Affirmed.

Hennelley & Grossfeld, Paul T. Martin and Susan J. Williams for Defendants and Appellants.

Sullivan Workman & Dee, Karyn A. M. Jakubowski and Charles D. Cummings for Plaintiffs and Respondents.

———————————

At issue is a dispute over an exclusive easement for parking. The trial court found that plaintiffs[1] had extinguished the easement burdening their property by adverse possession. Defendants,[2] the easement holders, appeal challenging only the finding that plaintiffs' use of the easement for parking, deliveries, and to house a boat, was hostile to defendants' rights. We hold that the easement at issue was an exclusive one that did not reserve to plaintiffs any right to use it, and so the evidence supports the trial court's finding that plaintiffs' use was hostile. Accordingly, we affirm the judgment.

## BACKGROUND

The easement at issue is located in a larger parking lot situated behind a block of commercial buildings on the corner of Alburtis Avenue and Telegraph Road in Santa Fe Springs, California (the easement). Measuring approximately 3,500 square feet and comprising 22 parking spaces, the easement burdens the rear of 9901 Alburtis Avenue and is sandwiched between two nonexclusive easements for ingress and egress. The easement was created by M & R Investment Company II in May 1999, by deed that granted "an exclusive easement for parking" (capitalization omitted) to M & R Investment Company with a mailing address of 11621 Telegraph Road.

---

[1] Plaintiffs are Rudy E. and Evelyn M. Valles, individually and as trustees of the Valles Living Trust dated June 26, 1997.

[2] Defendants are Samil and Nana Ruth Kim, individually and as trustees of the Kim Revocable Trust dated February 29, 1996.

I.    Plaintiffs' property at 9901 and 9915 Alburtis Avenue

Immediately adjacent to 9901 Alburtis Avenue, at the corner of Alburtis Avenue and Telegraph Road, is 9915 Alburtis Avenue, which plaintiffs have owned since 1988. There, plaintiffs operated their company Revco Spring Manufacturing (Revco Spring), a maker of precision springs. In addition to owning 9915 Alburtis Avenue, plaintiffs rented neighboring 9901 Alburtis Avenue to warehouse Revco Spring's machines and equipment.

In the fall of 1999, just months after creating the easement, M & R Investment Company II sold 9901 Alburtis Avenue to plaintiffs. The deed to plaintiffs identifies several non-exclusive easements but makes no mention of the easement at issue here. However, at the time of the sale, an executive at M & R Investment Company II told plaintiff Rudy Valles that an easement existed at the back of 9901 Alburtis Avenue for the benefit of 11621 to 11627 Telegraph Road. Also, the easement was listed as an exclusion from title insurance coverage on Schedule B, part 2 of the preliminary title report prepared for plaintiffs' escrow. As of autumn 1999, plaintiffs owned both 9901 and 9915 Alburtis Avenue.

Since at least 1993, employees of Revco Spring, along with members of plaintiffs' family, regularly parked on the easement, some three, and others five days a week. Also, two to three times a week, and sometimes daily depending on business, Revco Spring occupied the easement to load and unload equipment and products from big-rig trucks. The trucks were so large that they needed the entire easement simply to turn around.

In early 2000, Revco Spring slurry coated the easement area.

In February 2003, plaintiffs executed a deed to M & R Investment confirming the easement's existence. Still, plaintiffs continued to use the easement in the same manner for parking and deliveries.

From 2008 to 2014, plaintiffs' son David Valles used the easement to park a 27-by-8-foot trailer carrying his boat. At one point, he left the boat and trailer there for two years straight.[3]

Defendants' predecessors in interest resurfaced the easement in 2009.

Mario Andrade (Andrade) became plaintiffs' tenant at 9901 Alburtis Avenue in 2014 and used the easement daily for deliveries. At least 20 trucks loaded and unloaded boxes for Andrade twice a day, from between 5:00 a.m. and 8:00 a.m. and again from 11:00 a.m. until around 1:00 p.m. Meanwhile, Andrade's employees waited around on the easement for the trucks to arrive. During these deliveries, Andrade used all 22 of the easement's parking spaces.

Revco Spring did not erect barriers or prevent anyone from parking on the easement. Plaintiff Rudy Valles agreed that anyone who wanted to could park there.

Before 2015, no one told plaintiffs or any of plaintiffs' employees or tenants that they could not use the easement. The first time anyone attempted to restrict parking on the easement was in 2016 when defendants hired a security guard.

---

[3] In November 2012, plaintiffs conveyed the property to themselves for the purpose of changing the name of the owner of record. This transfer did not mention the easement.

4

II.    Defendants' property at 11621-11627 Telegraph Road

In July 2015, defendants purchased 11621-11627 Telegraph Road. Defendants' property consists of an office building with 74 parking spaces in the rear. In addition to several nonexclusive easements for ingress and egress over five parcels, the deed to defendants conveyed the easement. Including the easement's 22 spaces, defendants believed they had exclusive right to 96 parking spaces in the larger lot behind the block of commercial buildings on the corner of Alburtis Avenue and Telegraph Road. Defendants created PSM Joy, LLC to manage their property.

From the beginning, defendants saw that the easement was being used by parked cars, trucks, and David Valles' boat. Although no one prevented defendants' tenants from parking on the easement, tenants complained to defendants that they were unable to park there because plaintiffs were using all 22 spaces.

Days after purchasing the property, on July 20, 2015, defendant Samil Kim notified plaintiffs by letter that defendants owned the easement and that it was to be used by the owners and tenants of defendants' property only. Defendants requested that plaintiffs remove the boat trailer from the easement by the end of the month, and notified plaintiffs of defendants' intention to resurface and reline the easement.

Plaintiffs' attorney responded that his clients believed that they owned the disputed property. If there were an easement, counsel wrote, it was not exclusive. Hence, counsel instructed his clients not to remove any property from the easement.

Defendants restriped the easement in the summer of 2016 and plaintiffs made no attempt to stop them. In January 2016, defendants hired a security guard to police the 96 parking spaces

5

and assigned the spaces to their own tenants. During the 10 months the guard worked there, plaintiffs did not use the easement area.

However, on November 30, 2016, plaintiffs brought the instant lawsuit against defendants. The complaint sought to quiet title to the easement as of July 10, 2015 when defendants purchased their property, to cancel the easement deed, trespass damages, and declaratory relief.

After a two-day trial to the bench, the trial court found in favor of plaintiffs on the basis that they had satisfied all of the elements of adverse possession.[4] The court declared the easement extinguished. Defendants timely appealed.

## DISCUSSION

### I. Legal principles

" ' "An easement involves primarily the privilege of doing a certain act on, or to the detriment of, another's property." [Citation.] An easement gives a nonpossessory and restricted right to a specific use or activity upon another's property, which right must be *less* than the right of ownership. [Citation.]' [Citations.] Thus, '[t]he owner of the easement is not the owner of the property, but merely the possessor of a "right to use someone's land for a specified purpose." ' " (*Blackmore v. Powell* (2007) 150 Cal.App.4th 1593, 1598.)

"The land to which an easement is attached is called the dominant tenement; the land upon which a burden or servitude is laid is called the servient tenement." (Civ. Code, § 803; accord,

---

[4] The court found for defendants on plaintiffs' trespass cause of action.

6

*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 767.) Here, defendants' land would be the dominant tenement and plaintiffs' land was the servient tenement.

The "extent of a servitude is determined by the terms of the grant." (Civ. Code, § 806.) " 'In construing an instrument conveying an easement, the rules applicable to the construction of deeds generally apply.' [Citation.] The instrument, 'unless it is ambiguous, must be construed by a consideration of its own terms. The meaning and intent thereof is a question of law and the reviewing court is not bound by the trial court's findings and conclusions regarding such intent and meaning.' " (*Gray v. McCormick* (2008) 167 Cal.App.4th 1019, 1024 (*Gray*).)

An "easement may be extinguished by the user of the servient tenement in a manner adverse to the exercise of the easement, for the period required to give title to land by adverse possession." (*Glatts v. Henson* (1948) 31 Cal.2d 368, 371.) In California, to establish title by adverse possession, the claimant must show five elements: " '1) Possession under claim of right or color of title; 2) actual, open, and notorious occupation of the premises in such a manner as to constitute reasonable notice to the true owner; 3) possession which is adverse and hostile to the true owner; 4) possession which is uninterrupted and continuous for at least five years; and 5) payment of all taxes assessed against the property during the five-year period.' " (*Marriage v. Keener* (1994) 26 Cal.App.4th 186, 192.)

"Whether the various elements of adverse possession have been established is a question of fact." (*Sevier v. Locher* (1990) 222 Cal.App.3d 1082, 1087.) " 'On appeal, when the evidence is contradictory, conflicting interpretations are presented thereby, or conflicting inferences may be drawn therefrom, that which

7

favors the judgment must be accepted as true, and that which is unfavorable must be discarded as not having had sufficient verity for acceptance by the trial court.' " (*Ibid*.)

II.    Analysis

A. *The easement is exclusive and reserved no rights to the servient tenement.*

Defendants do not dispute that plaintiffs established four of the five elements of adverse possession.  They only challenge the trial court's finding that the "easement at issue in this case is an 'exclusive easement for parking.'  *Any use of the easement area would be hostile to the Parking Easemen*t."  (Italics added.) Defendants contend that to meet the hostility element, plaintiffs must have actually erected a barrier or made a permanent improvement on the easement that completely prevented defendants from using it.  They argue that plaintiffs' "transitory" use of the easement and failure to prevent defendants from parking on it was not inconsistent with defendants' rights and did not operate to extinguish the easement.

Here, the deed conveying the easement benefiting defendants' land granted "an exclusive easement for parking." (See Civ. Code, § 806.)  The parties do not dispute that the easement was exclusive.

An " 'exclusive easement' is an unusual interest in land; it has been said to amount almost to a conveyance of the fee."  (*City of Pasadena v. California-Michigan Land & Water Co.* (1941) 17 Cal.2d 576, 578.)  " 'The term "exclusive" used in the context of servitudes means the right to exclude others.  The degree of exclusivity of the rights conferred by an easement . . . is highly variable and includes two aspects:  who may be excluded and the uses or area from which they may be excluded.  At one extreme,

8

the holder of the easement . . . has no right to exclude anyone from making any use that does not unreasonably interfere with the uses authorized by the servitude. . . . At the other extreme, the holder of the easement . . . has the right to exclude everyone, including the servient owner, from making any use of the land within the easement boundaries.' " (*Gray, supra,* 167 Cal.App.4th at p. 1024.) The former extreme is relative, whereas the latter is absolute.

In *Gray, supra,* 167 Cal.App.4th at page 1026, the questions were whether the easement was exclusive, and the extent of the exclusivity conferred. After reviewing the case law of exclusive easements, the *Gray* court construed the instrument creating the easement there as granting an exclusive one. (*Ibid.*) *Gray* then rejected the servient owners' argument that the instrument gave them the right to all uses of the easement area that were not inconsistent with the easement holders' rights. (*Id.* at pp. 1027–1028.) *Gray* concluded that the degree of exclusivity fell on the latter, absolute extreme because the language of the instrument did not reserve to the servient tenement *any rights.* (*Id.* at pp. 1029–1029.) Thus, the dominant owner had the right to exclude everyone while the servient tenement had no right to use the easement at all.

Here, viewing the easement deed, not only does the grant expressly convey an *exclusive* easement for parking, but it contains *no express reservation of any rights in favor of the owners of the servient tenement at 9901 Alburtis Avenue.* Accordingly, this easement lies at the absolute extreme described in *Gray, supra,* 167 Cal.App.4th at page 1024, in which the easement holder has " 'the right to exclude *everyone*, including

9

the servient owner, from making *any use* of the land within the easement boundaries.' " (Italics added.)

B. *The evidence supports the trial court's finding that plaintiffs' use was hostile.*

One may extinguish a servitude by "the performance of any act upon either tenement, by the owner of the servitude, or with his assent, which is *incompatible* with its nature *or* exercise." (Civ. Code, § 811, subd. (3), italics added.) Here, only the dominant tenement owner, defendants, and their tenants were entitled to park on the easement. Nonetheless, the evidence and inferences therefrom establish that starting around 1999 and continuing for 17 years, plaintiffs, their tenants, employees, and their deliverers, used the easement for parking, for trucks, and even left a boat trailer on the easement for two of those years. Defendants' tenants complained that they were unable to park there because it was occupied by plaintiffs. Accordingly, we discern no trial court error in finding that plaintiffs' use was hostile to the easement holders' right to exclude everyone from the easement because the use was incompatible with the easement's nature.

Defendants cite numerous cases involving nonexclusive easement rights to argue that the hostile element of adverse possession requires the construction of a barrier or the alteration of the easement to prevent the dominant tenement from using it. They observe that plaintiffs' conduct did not oust them because plaintiffs' use was transitory and did not physically prevent defendants and their tenants from parking in the 22 spaces. Defendants contend therefore, that "the trial court apparently assumed that an exclusive easement is subject to a different, more lenient legal standard than is applied to non-exclusive

10

easements, such that an exclusive easement is easily extinguished by 'any use' whereas a non-exclusive easement is extinguished only where its use is rendered impossible."

The trial court did not apply a different standard for exclusive easements than for nonexclusive easements. A servient owner extinguishes an easement by "the performance of any act . . . which is *incompatible* with [the easement's] nature or exercise." (Civ. Code, § 811, subd. (3), italics added.) That statute does not distinguish between exclusive and nonexclusive easements and so it applies to both kinds. Likewise, the statute allows for "any act" to extinguish a servitude so long as it is incompatible with the nature or exercise of the easement. (*Ibid*.) Thus, to terminate an easement by adverse possession the occupancy must be sufficient to interfere with the easement's practical use. (6 Miller & Starr, Cal. Real Estate (4th ed. 2020) Easements, § 15:85, fn. omitted (Miller & Starr).) Whether the servient owner's use is incompatible with an easement's nature or exercise, is a question of fact for the trier of fact, whose findings are binding on the appellate court if supported by substantial evidence. (*Inzana v. Turlock Irrigation Dist. Bd. of Directors* (2019) 35 Cal.App.5th 429, 445; *Sevier v. Locher*, *supra*, 222 Cal.App.3d at p. 1087; *Popovich v. O'Neal* (1963) 219 Cal.App.2d 553, 556.)

"With non-exclusive easements, the respective rights and duties of the dominant and servient tenements are relative and complementary." (6 Miller & Starr, Cal. Real Estate, *supra*, § 15:63, fn. omitted.) The servient tenement owner is " 'entitled to make all uses of the land that are not prohibited by the servitude and that do not interfere unreasonably with the uses authorized by the easement.' " (*Dolnikov v. Ekizian* (2013)

11

222 Cal.App.4th 419, 429.) Servient tenement owners may use their property burdened by a nonexclusive easement without unreasonably interfering with the dominant owner's rights. (*Ibid*.) Therefore, to successfully extinguish a nonexclusive easement, where both the dominant and servient owners' use rights coincide, the servient owner's hostile activity necessarily must actually interfere with the dominant owner's exercise, such as by preventing, or materially obstructing, the dominant owner's use.[5]

That is not the case with an exclusive easement that, as with the one at issue here, permits *only* the dominant owner to use it. With an easement granting the strict degree of exclusivity found in defendants' deed, any use of, and command over the easement, is naturally incompatible with the dominant owner's rights to exclude everyone. The evidence supports the trial court's finding that plaintiffs' use of the exclusive easement in this case was hostile because it was wholly incompatible with the

---

[5] The cases defendants rely on are distinguished because they all involved easements in which the dominant owner did not hold the right to exclude any use by everyone. (*Gerhard v. Stephens* (1968) 68 Cal.2d 864 [no interference with subsurface right to drill for oil by conduct on surface]; *Vieira Enterprises, Inc. v. McCoy* (2017) 8 Cal.App.5th 1057 [nonexclusive right of way]; *Reichardt v. Hoffman*, *supra*, 52 Cal.App.4th at p. 762 [easement not exclusive]; *Tract Development Services, Inc. v. Kepler* (1988) 199 Cal.App.3d 1374, 1387 [no claim easement was exclusive]; *Zimmer v. Dykstra* (1974) 39 Cal.App.3d 422, 427 [nondedicated alleyway]; *Guerra v. Packard* (1965) 236 Cal.App.2d 272 [nonexclusive right of way]; *Weller v. Chavarria* (1965) 233 Cal.App.2d 234, 238 [tenants in common owning undivided one-half interests in roadway].)

easement's exclusive nature and the dominant owner's right to exercise that exclusivity. (See, e.g., Civ. Code, § 811, subd. (3).)

Defendants also argue that plaintiffs' use was "transitory" because plaintiffs intermittently occupied the easement during work hours but did not permanently bar others from using it. Defendants cite testimony that plaintiffs allowed anyone who wanted to park in the easement's spaces, including the tenant of defendants' predecessor in interest, whose employees parked on the easement as of 2003. We disagree. "Exclusive" occupation by the adverse claimant is not an element of adverse possession and, plaintiffs' use, in the circumstances of this case, interfered with defendants' right to exclude all use of the easement and hence was hostile.[6]

Defendants dedicated much trial time to exhibits 236 and 237, the deed that plaintiffs executed in February 2003 confirming the easement's existence. They also elicited testimony that defendants' predecessors in interest resurfaced and restriped the easement in 2009. The five-year statute of limitations began to run in 2003 when plaintiffs persisted in using the exclusive parking space, openly, notoriously, and without permission, notwithstanding their acknowledgment of the easement's existence. Hence, by 2009, when defendants' predecessors in interest restriped the easement, and long before 2015 when defendants purchased the dominant tenement, or 2016 when

---

[6] Code of Civil Procedure section 325, subdivision (a) does not aid defendants because that statute sets forth the elements of adverse possession in general and not with specific reference to easements, which involve the adverse possession of a right to *use*, not of a *fee*.

defendants themselves resurfaced the easement, plaintiffs had already extinguished the easement by adverse possession.

## DISPOSITION

The judgment is affirmed. Respondents are awarded their costs on appeal.

NOT TO BE PUBLISHED.


DHANIDINA, J.


We concur:


EDMON, P. J.


EGERTON, J.