Filed 11/6/24  Hastings v. Kevorkian CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LISA HASTINGS,<br><br>    Plaintiff, Cross-defendant and Respondent,<br><br>    v.<br><br>ABRAHAM KEVORKIAN,<br><br>    Defendant, Cross-complainant and Appellant. | B312056<br><br>(Los Angeles County Super. Ct. Nos. EC064909, EC066975) |

APPEAL from a judgment and orders of the Superior Court of Los Angeles County, John Kralik, Judge. Affirmed.

Abraham Kevorkian, in pro. per., for Defendant, Cross-complainant and Appellant.

Mazur & Mazur and Janice R. Mazur for Plaintiff, Cross-defendant and Respondent.

Abraham Kevorkian (appellant) appeals from a judgment in favor of Lisa Hastings (respondent) that resolved disputes concerning easement rights on a private road in Altadena, California.[1] Appellant also challenges numerous pre- and postjudgment orders, including orders on demurrers, summary adjudication, costs, and attorney fees. We find no error and affirm the judgment and orders in their entirety.

**FACTUAL AND PROCEDURAL BACKGROUND**

This case chronicles a decade-long feud between neighbors on Colman Street, a private road in Altadena, California. What began as a disagreement over parking rights has escalated into a legal battle involving property rights, easements, and allegations of harassment.

Appellant and his wife Nancy, who purchased their property on the southern side of the street in December 2008, and respondent, who has owned her property on the northern side since 1992, have been embroiled in a conflict primarily centered on the use of a 30-foot easement that allows appellant to use a portion of respondent's property. Respondent contends it should be used solely for ingress and egress, while appellant argues for broader rights, including parking and utility access.

The properties on Colman Street were subdivided in the 1950's, with the northern lots burdened by easements for the benefit of other parcels on the street. Appellant's grant deed

---

[1]    As appellant does not appear to be a member of the California State Bar association, or pro hac vice, he is not permitted to represent his wife, Nancy Kevorkian's interests in this court.

reflects a 30-foot easement for ingress and egress for use in common with others.

The conflict escalated in November 2010, when respondent contacted the Los Angeles County Fire Department to complain about parking at the street's entrance. This led to the implementation of a fire lane on the south side of Colman Street, prohibiting appellant from parking in front of his property. As the trial court noted in its statement of decision: "the County's attempts to impose a fire lane on Colman Street, a process initiated by [respondent's] complaints, provoked an angry reaction from [appellant] and precipitated the bitter personal and legal disputes between [respondent] and [appellant], which have taken on the character of a long-running feud."

Appellant engaged in various acts, including parking in the fire lane, removing fire lane signs, and painting over fire lane markings. These actions, coupled with allegations of vandalism, harassment, and trespassing, exacerbated the conflict between the parties.

The conflict progressed and on January 29, 2016, respondent filed her initial lawsuit against appellant and his wife, claiming they had entered her property and destroyed the fire lane sign and markings she had installed. Appellant filed a cross-complaint on July 21, 2016, seeking injunctive relief and to quiet title in the easement claimed on appellant's property. Respondent filed a second lawsuit on July 3, 2017, seeking to quiet title, to enjoin encroachments, and to cancel a written instrument recorded by appellant and his wife. Respondent then filed a supplemental complaint on March 25, 2019, seeking reformation or cancellation of the instrument, declaratory relief, damages for slander of title, and a permanent injunction.

The legal proceedings involved multiple motions, including an anti-SLAPP motion by appellant, which was denied on July 8, 2016. Demurrers to the first and third causes of action in appellant's cross-complaint were sustained without leave to amend on October 7, 2016. A preliminary injunction prohibiting appellant from parking on the easement or any part of the fire lane was issued on October 28, 2016. Reconsideration of this injunction was sought by appellant, and relief was denied on December 30, 2016. Sanctions of $5,140 were imposed against appellant for bringing three untimely discovery motions on November 27, 2019.

In the first lawsuit, the remaining causes of action in appellant's cross-complaint—the second cause of action for prescriptive easement and the fourth cause of action for intentional infliction of emotional distress—were resolved by the grant of summary adjudication in favor of respondent on February 7, 2018. At the same hearing, summary adjudication was granted in favor of respondent on her cause of action for trespass.

The two cases were eventually consolidated for trial. Following a 12-day bench trial, the court issued a 54-page statement of decision and judgment largely in respondent's favor on June 17, 2020. The court found appellant could use the 30-foot easement for ingress and egress, upheld the validity of the fire lane, and granted injunctive relief barring appellant from parking on Colman Street in violation of the fire lane or in front of respondent's property.

Subsequent motions resulted in the denial of appellant's motion for new trial on March 1, 2021. Appellant's motion to tax costs was granted in part and denied in part on April 23, 2021.

Respondent's motion for attorney fees was partially granted on July 30, 2021, and she was awarded $82,153.75 in fees.

Appellant now appeals each of these orders and the judgment.[2]

## CONTENTIONS ON APPEAL

Appellant raises the following challenges on appeal:

1.     The trial court erred in sustaining demurrers to the first and third causes of action in appellant's cross-complaint without leave to amend.

2.     The court erred in denying his motion for reconsideration of the temporary restraining order.

3.     The court erred in granting summary adjudication in favor of respondent on her second cause of action for trespass and on appellant's second and fourth causes of action in his cross-complaint.

4.     The court erred in denying his anti-SLAPP motion.

5.     The court abused its discretion in imposing sanctions of $5,140 against appellant.

6.     The trial court erred in interpreting the "McHaffie Agreement" and other key documents regarding easement rights.

7.     The trial court erred in finding the fire lane on the south side of Colman Street valid and enforceable.

---

[2]     This appeal consolidates challenges to orders from two related trial court cases: *Hastings v. Kevorkian et al.*, Los Angeles Superior Court Case No. EC064909, and *Hastings v. Kevorkian et al.*, Los Angeles Superior Court Case No. EC066975. These cases were consolidated for trial on December 9, 2019.

Hastings initially filed a cross-appeal in the present case (No. B312056), but it was abandoned on August 9, 2021.

8.    The trial court abused its discretion in excluding evidence and testimony from his expert witness regarding the historical understanding of easement rights on Colman Street.

9.    The trial court's factual findings regarding the parties' conduct and rights are not supported by the evidence presented at trial.

10.    Appellant has acquired a prescriptive right to park on Colman Street through long-term use.

11.    The scope of injunctive relief granted, which prohibits appellant from parking on Colman Street on the fire lane or in front of Hastings's property, is overly broad.

12.    The trial court erred in denying appellant's motion for a new trial.

13.    The trial court abused its discretion in its awards of costs and attorney fees to respondent.[3]


## DISCUSSION

### I.    Scope of appealable orders

We first identify the orders properly before this court and next explain why the remaining orders are not before us.

### A.    *Properly challenged orders:*

1.    The October 7, 2016 order sustaining without leave to amend demurrers to the first and third causes of action in the appellant's cross-complaint. This is an appealable order under *Jennings v. Marralle* (1994) 8 Cal.4th 121, 128 (*Jennings*) (holding orders sustaining demurrers or summary adjudication are generally reviewable on appeal from final judgment).

---

[3]    We note that some of these challenges are not properly before this court due to jurisdictional limitations, as will be discussed in detail below.

2.     The February 7, 2018 order granting summary adjudication in favor of respondent on her second cause of action for trespass and on appellant's second and fourth causes of action in the cross-complaint. This too is appealable under *Jennings*.

3.     The March 1, 2021 order denying appellant's motion for new trial. This order is reviewable on appeal from the judgment pursuant to Code of Civil Procedure section 906.

4.     The April 23, 2021 order granting in part and denying in part appellant's motion to tax costs. This is reviewable under Code of Civil Procedure section 904.1, subdivision (a)(2).

5.     The July 30, 2021 order granting in part and denying in part respondent's motion for attorney fees. This is reviewable under Code of Civil Procedure section 904.1, subdivision (a)(2).

### B.     *Limited review absent transcript*

The January 12, 2021 judgment entered following trial is appealable under Code of Civil Procedure section 904.1, subdivision (a)(1). However, appellant provided no reporter's transcript for the 12-day trial. "Where no reporter's transcript has been provided and no error is apparent on the face of the existing appellate record, the judgment must be *conclusively presumed correct* as to *all evidentiary matters*." (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992.) As a result, our review of challenges to evidentiary rulings and findings is limited by the absence of a transcript of the proceeding.

### C.     *Orders not properly before this court*

1.     The July 8, 2016 denial of appellant's anti-SLAPP motion. An order denying an anti-SLAPP motion is immediately appealable. (Code Civ. Proc., § 425.16, subd. (i).) Appellant filed the notice of appeal on March 23, 2021, almost five years after the order was issued. The failure to timely appeal this order in

2016 precludes review at this time. (Cal. Rules of Court, rule 8.104(b); *Marshall v. Webster* (2020) 54 Cal.App.5th 275, 279, 288 (*Marshall*) [dismissing an anti-SLAPP appeal because "'[t]he time for appealing a judgment is jurisdictional; once the deadline expires, the appellate court has no power to entertain the appeal'" from that order].)

2. The November 27, 2019 sanction order of $5,140 against appellant for filing three untimely discovery motions. An order imposing sanctions exceeding $5,000 is directly appealable. (Code Civ. Proc., § 904.1, subd. (a)(12).) Appellant filed his notice of appeal on March 23, 2021, more than a year after the order was issued. Appellant's failure to timely appeal this order in 2019 or 2020 precludes current review. (*Drum v. Superior Court* (2006) 139 Cal.App.4th 845, 851 [dismissing an untimely appeal from an order imposing monetary sanctions].)

Jurisdictional limitations on our review are fundamental. The time for filing a notice of appeal is jurisdictional and once the deadline expires, the appellate court has no power to entertain the appeal. (*Silverbrand v. County of Los Angeles* (2009) 46 Cal.4th 106, 113.) As a result, we lack jurisdiction to consider appellant's challenges to the anti-SLAPP denial and the sanctions order.

3. The December 30, 2016 denial of appellant's motion for reconsideration of the temporary restraining order. An order denying a motion for reconsideration pursuant to Code of Civil Procedure section 1008, subdivision (a) is not appealable. (*Annette F. v. Sharon S.* (2005) 130 Cal.App.4th 1448, 1459.) As a result, we will not consider appellant's challenge to this order.

## II. The demurrers were properly sustained

On October 7, 2016, the trial court sustained respondent's demurrer to the first and third causes of action in appellant' cross-complaint without leave to amend. We review the trial court's order sustaining a demurrer de novo (*Tenet Healthsystem Desert, Inc. v. Blue Cross of California* (2016) 245 Cal.App.4th 821, 833) and consider whether denial of leave to amend was an abuse of discretion (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318).

### A. *First cause of action: injunctive relief*

The demurrer to this cause of action was proper, in that injunctive relief is a remedy, not a cause of action. (*Shell Oil Co. v. Richter* (1942) 52 Cal.App.2d 164, 168.) Appellant's attempt to plead it as an independent claim was improper and the demurrer was correctly sustained.

### B. *Third cause of action: trespass*

The court correctly found appellant could not state a cause of action for trespass on the easement against respondent, as an easement is a restricted right to specific, limited, definable use or activity upon another's property. (*Gray v. McCormick* (2008) 167 Cal.App.4th 1019, 1023.)

The owner of the land burdened by the easement is called the servient tenement owner, while the party benefiting from the easement is the dominant tenement owner. The servient tenement owner retains the right to use their land in any manner not inconsistent with the easement. (*Pasadena v. California-Michigan etc. Co.* (1941) 17 Cal.2d 576, 579.)

Trespass is an unauthorized entry on the land of another, which interferes with the owner's exclusive possessory rights. (*McBride v. Smith* (2018) 18 Cal.App.5th 1160, 1173.) Since respondent retains possession of her property, subject only to

9

appellant's limited easement right to use it for ingress and egress, she cannot unlawfully interfere with her own possession. As a result, respondent, as the servient tenement owner, cannot legally trespass on her own property. (*Id.* at p. 1174.)

Appellant argues that respondent's alleged encroachments on the easement area constitute a trespass. However, the owner of a servient tenement may make any use of the property that does not unreasonably interfere with the easement. (*Scruby v. Vintage Grapevine, Inc.* (1995) 37 Cal.App.4th 697, 702–703.) Appellant did not allege facts showing respondent's use unreasonably interfered with appellant's easement rights. Thus, appellant did not plead sufficient facts to state a claim for trespass in this cause of action.

### C. *Denial of leave to amend*

As noted above, we review the trial court's denial of leave to amend for abuse of discretion. (*Blank v. Kirwan, supra*, 39 Cal.3d at p. 318.) The burden is on appellant to show how he could amend his pleading to state a valid cause of action. (*Ibid*.) Appellant has not met this burden. Given the failure to show how he could amend the legal deficiencies in these causes of action, there was no abuse of discretion by the trial court.

## III. Summary adjudication was properly granted

On February 7, 2018, the trial court granted summary adjudication in favor of respondent on her second cause of action for trespass and on the appellant's second cause of action for prescriptive easement and fourth cause of action for intentional infliction of emotional distress in the cross-complaint. We analyze each of these rulings separately.

10

### A. *Standard of review*

"A trial court's ruling granting summary judgment is reviewed de novo, and the nonmoving party's evidence is liberally construed while the moving party's evidence is strictly scrutinized." (*Talley v. County of Fresno* (2020) 51 Cal.App.5th 1060, 1070.) "A court ruling on a summary judgment motion 'shall consider all of the evidence set forth in the papers, *except the evidence to which objections have been made and sustained*.'" (*Ibid.*)

### B. *Respondent's claim of trespass*

To establish trespass, respondent is required to show (1) she owned or controlled the property; (2) appellant intentionally entered the property; (3) respondent gave no permission for the entry; and (4) respondent was harmed. (*Ralphs Grocery Co. v. Victory Consultants, Inc.* (2017) 17 Cal.App.5th 245, 262.)

Respondent presented evidence (1) she owned the property where the fire lane was established; (2) appellant entered her property and damaged the fire lane markings; (3) respondent did not give permission for this entry; and (4) respondent suffered harm in the form of costs incurred to establish the fire lane and repair the damage.

As appellant failed to present evidence creating a triable issue of material fact on any of these elements, the grant of summary adjudication on this claim was proper.

### C. *Appellant's claim of prescriptive easement*

To establish a prescriptive easement, appellant is required to show use of the property that was open, notorious, continuous, and adverse for an uninterrupted period of five years. (*Warsaw v. Chicago Metallic Ceilings, Inc.* (1984) 35 Cal.3d 564, 570.)

11

Appellant sought to quiet title on the south side of the street on a portion of respondent's property, on the theory he had obtained a prescriptive easement by using it for parking for seven years. Respondent presented evidence that a fire lane had been established on that portion of the street on February 7, 2012. Appellant did not present evidence creating a triable issue of fact regarding the establishment of the fire lane.

Civil Code section 1007 bars private individuals from obtaining prescriptive rights over property dedicated to public use. As a result, a prescriptive easement cannot be acquired in property held by the public for public use or benefit. (*Guerra v. Packard* (1965) 236 Cal.App.2d 272, 284.) This rule applies not only to property where the public body holds title, but also to property where the public body holds merely an easement. (*Ibid.*) Since the fire lane on the south side of the street was an easement dedicated for a public use, appellant could not establish a prescriptive easement for parking on the south side. Therefore, the grant of summary adjudication on this claim was proper.

### D. *Appellant's claim of intentional infliction of emotional distress*

To establish intentional infliction of emotional distress, appellant is required to show: (1) extreme and outrageous conduct by respondent; (2) her intention to cause or reckless disregard of the probability of causing him emotional distress; (3) severe emotional suffering; and (4) actual and proximate causation. (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050.)

In the cross-complaint, appellant claimed respondent engaged in extreme and outrageous conduct by making racial slurs and accusing appellant of being in the "Armenian mafia." Respondent presented evidence denying racial slurs and the

intent to cause emotional distress when she sent an e-mail to the Los Angeles County District Attorney about the conflict between the parties containing the statement, "Honestly, I do not know if the Kevorkians are connected to the Armenian mafia or if they are just common bullies." Appellant failed to present evidence showing respondent engaged in extreme and outrageous conduct or with an intent to cause emotional distress.

Further, liability for intentional infliction of emotional distress does not extend to mere insults, indignities, threats, annoyances, or petty oppressions. (*Hughes v. Pair, supra*, 46 Cal.4th at p. 1051.) The necessary showing is extreme and outrageous conduct, which must be so """"extreme as to exceed all bounds of that usually tolerated in a civilized community."""" (*Id.* at pp. 1050–1051.) Appellant provided no evidence of such conduct. The grant of summary adjudication on this claim was proper.

### E. *Conclusion*

Based on our de novo review the trial court correctly granted summary adjudication on all three claims. Appellant has not demonstrated the existence of triable issues of material fact at the time of the ruling, nor has he shown any error in the court's application of the law to the undisputed facts.

## IV. The judgment is well-reasoned and supported by sufficient evidence

In reviewing a judgment entered after a bench trial, "'we review the entire record in the light most favorable to the judgment to determine whether there are sufficient facts, contradicted or uncontradicted, to support the judgment.'" (*Patricia A. Murray Dental Corp. v. Dentsply Internat., Inc.*

(2018) 19 Cal.App.5th 258, 270 *(Patricia A. Murray Dental Corp*.).)

We review findings of fact in the statement of decision for substantial evidence. (*Gomez v. Smith* (2020) 54 Cal.App.5th 1016, 1026.) Under this test, ""[W]e are bound by the established rules of appellate review that all factual matters will be viewed most favorably to the prevailing party [citations] and in support of the judgment . . . . 'In brief, the appellate court ordinarily *looks only at the evidence supporting the successful party, and disregards the contrary showing*.' [Citation.] All conflicts, therefore, must be resolved in favor of the respondent.""" (*Patricia A. Murray Dental Corp., supra*, 19 Cal.App.5th at pp. 269–270.)

"'Substantial evidence is evidence that is reasonable and credible. In evaluating the evidence, we accept reasonable inferences in support of the judgment and do not consider whether contrary inferences may be made from the evidence.'" (*Patricia A. Murray Dental Corp., supra*, 19 Cal.App.5th at p. 270.)

Appellant challenges the judgment on several grounds. We address each challenge in turn, noting our review is significantly limited by the appellant's failure to provide a transcript of the 12-day trial.

"Where no reporter's transcript has been provided and no error is apparent on the face of the existing appellate record, the judgment must be *conclusively presumed correct* as to *all evidentiary matters*." (*Estate of Fain, supra*, 75 Cal.App.4th at p. 992.) "It is presumed that the unreported trial testimony would demonstrate the absence of error" and, as a result, "an appellant who attacks a judgment but supplies no reporter's transcript will

14

be precluded from raising an argument as to the sufficiency of the evidence." (*Ibid.*)

Appellant argues a transcript is unnecessary because the appeal is based primarily on legal issues and document interpretation. While some aspects of this appeal involve questions of law, the absence of a reporter's transcript significantly limits our review. The trial court heard testimony to assist in the interpretation of documents. A transcript might reveal concessions, stipulations, or explanations that could affect our review. "A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

Given these limitations, we turn to appellant's challenges.

### A.    *Interpretation of easement rights*

Appellant argues the trial court misinterpreted documents that support his claim to a broader 34-foot easement for road and utility purposes.

An easement is a restricted right to specific, limited, definable use or activity upon another's property. (*Gray v. McCormick, supra*, 167 Cal.App.4th at p. 1023.) The extent of a servitude is determined by the terms of its grant. (*Ibid.*) When interpreting an instrument conveying an easement, the same rules that apply to the construction of deeds generally are used. (*Ibid.*) Unless the instrument is ambiguous, it must be construed by considering its own terms. (*Ibid.*) Determining the meaning and intent of the instrument is a question of law, and an appellate court is not bound by the trial court's findings and conclusions regarding such intent and meaning. (*Ibid.*)

The court traced appellant's easement to a 1950 grant from James E. Meagher to Ianthe Densmore that described a 30-foot easement for ingress and egress. This finding is supported by citations to the record and appellant identifies no error.

In examining the chain of title, the court noted subsequent deeds in appellant's chain consistently described a 30-foot ingress and egress easement. This consistent description in the recorded documents supports the court's conclusion of the limited nature of the easement. The trial court also relied on testimony from Gary Bernard, a title expert, who opined appellant's property only benefits from a 30-foot easement for ingress and egress. The court's reliance on expert opinion in interpreting complex title documents is reasonable.

Central to this dispute is the interpretation of various deeds and agreements, particularly the 1957 McHaffie Agreement. The trial court found the McHaffie Agreement was an attempt by 14 property owners to clarify the easement rights on Colman Street. While the agreement identified 30-foot and 34-foot easements, the court noted "there is no language of grant in this document," i.e., it did not grant or create new easement rights for the 14 property owners. Importantly, the trial court observed appellant's predecessor in interest, Densmore, was not a signatory to this agreement. As a result, appellant's predecessor did not agree to the clarification.

We agree with the court's interpretation of this document. It was aimed to clarify easement rights among signatories, who were property owners on Colman Street. It did not create or grant new rights for nonsignatories, such as appellant's predecessor in interest.

16

The court's ultimate conclusion that appellant's property benefits from only a 30-foot easement for ingress and egress, rather than a broader 34-foot road and utility easement, is supported by the documentary evidence, as it gives effect to the original easement grant and subsequent recorded documents, while also considering the attempted clarification in the McHaffie Agreement. Based on the limited record before us and the presumption of correctness afforded to the trial court's factual findings, we cannot say the court's interpretation of these key documents was erroneous.[4] Appellant, as a result, has not demonstrated the trial court's conclusions lack support in the record or that its reasoning was flawed.

**B.** *Validity of fire lane*

Appellant disputes the validity of the fire lane, arguing proper procedures were not followed in establishing this restriction on a private street. However, the trial court's finding otherwise is based on testimony from a representative of the Los Angeles County Fire Department. Without a transcript of the testimony, we cannot reevaluate the evidence presented on this issue and must defer to the trial court's factual findings.

---

[4] At oral argument, appellant cited *Cottonwood Duplexes, LLC v. Barlow* (2012) 210 Cal.App.4th 1501. *Cottonwood* held a court cannot partially extinguish a granted easement based solely on the dominant tenement's reasonable needs. (*Id.* at p. 1509.) It is inapplicable here because the trial court did not extinguish or reduce appellant's easement on that or any other basis. Instead, the court interpreted the scope of the existing easement as one for ingress and egress based on governing documents and evidence presented at trial. This interpretation of an easement's scope is distinct from the partial extinguishment rejected in *Cottonwood*.

17

### C.  *Exclusion of testimony*

Appellant challenges the exclusion of testimony, particularly that of himself and an expert. The court's minute order denying the new trial motion states: "[Appellant] was given adequate opportunity to testify . . . ." The court also found the expert witness had not been properly identified and was therefore not permitted to testify, and in any event, his proffered testimony likely would not have had any effect on the result. Again, without a transcript of the proceedings, we cannot assess the context of any evidentiary rulings on witnesses or determine whether it constituted an abuse of discretion.

### D.  *Factual findings*

Appellant argues the court's factual findings are not supported by the evidence. Without a reporter's transcript, we are unable to review the testimony and other evidence presented at trial and must therefore presume that the evidence supports the court's findings. (*Estate of Fain, supra*, 75 Cal.App.4th at p. 992.)

### E.  *Prescriptive rights*

Appellant argues he acquired prescriptive rights to park on Colman Street through long-term use. The trial court noted appellant' claim of prescriptive easement had been defeated because the south side of the street had been dedicated as a county fire lane on February 7, 2012. The designation of a fire lane constitutes a dedication to public use for public safety purposes.

Civil Code section 1007 states in relevant part: "[N]o possession by any person, firm or corporation no matter how long continued of any land, water, water right, easement, or other property whatsoever dedicated to a public use by a public utility,

18

or dedicated to or owned by the state or any public entity, shall ever ripen into any title, interest or right against the owner thereof."

This statute effectively prevents private individuals from acquiring prescriptive rights over property that has been dedicated to public use. The rationale behind this rule is to protect public rights and interests from being lost through private use, no matter how long that use has continued.

Therefore, even if appellant could demonstrate long-term use of the area for parking, he cannot acquire prescriptive rights over an area that has been dedicated as a public fire lane. The public safety purpose of the fire lane takes precedence over any private claim of right based on historical use.

Appellant has not demonstrated any error in the trial court's conclusion that a prescriptive right over the fire lane area was not established.

**F.** *Injunctive relief*

The trial court granted injunctive relief prohibiting appellant from parking on Colman Street, either in front of respondent's property or on the fire lane. Courts have the power to grant permanent injunctions under Code of Civil Procedure section 525 and Civil Code section 3422. Unlike a preliminary injunction, which is issued to maintain the status quo pending trial, a permanent injunction is issued as part of a final judgment after a full hearing on the merits. (*Art Movers, Inc. v. Ni West, Inc.* (1992) 3 Cal.App.4th 640, 646.)

To obtain a permanent injunction, (1) a party must prevail on a cause of action for tort or other wrongful act against another and (2) equitable relief is appropriate, such as a damage remedy is inadequate. (*Benasra v. Mitchell Silberberg & Knupp* (2002) 96

Cal.App.4th 96, 110.) The decision to grant a permanent injunction rests within the trial court's sound discretion and will not be disturbed on appeal absent a showing of a clear abuse of discretion. (*Shapiro v. San Diego City Council* (2002) 96 Cal.App.4th 904, 912.)

In this case, the court's issuance of a permanent injunction as part of its final judgment is based on finding respondent proved her claims regarding the easement rights and the validity of the fire lane and appellant's ongoing violations of these rights would cause irreparable harm that could not be adequately addressed by monetary damages alone. It does not bar appellant from using Colman Street for ingress and egress; it only restricts parking in specific areas consistent with the court's findings on easement rights and the fire lane's validity. Given the court's findings on the merits and the presumption of correctness we must afford those findings in the absence of a reporter's transcript, we find no error.

## V. Denial of appellant's motion for new trial was not an abuse of discretion

"Generally, rulings on new trial motions are reviewed for an abuse of discretion." (*Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1176.) Appellant argued in his new trial motion the court did not allow witnesses, including himself, the ability to testify. Without a reporter's transcript, the ability to review the context and reasoning behind the trial court's decision to bar a witness from testifying is limited. However, the court's minute order denying the new trial motion states: "[Appellant] was given adequate opportunity to testify . . . ." The court also found that the expert witness had not been properly identified and was therefore not permitted to

testify, and in any event, his proffered testimony likely would not have had any effect on the result.

Throughout his briefs, appellant argues the trial court misinterpreted the McHaffie Agreement and other key documents regarding easement rights, erred in finding the fire lane valid and enforceable, improperly excluded evidence and testimony from their expert, and made factual findings regarding the parties' conduct and rights that were not supported by the evidence. Without a transcript, we cannot verify appellant's characterizations of oral testimony or the court's oral rulings during trial, assess whether the court's interpretation of key documents was influenced by witness testimony or other evidence presented orally at trial, evaluate the context or reasoning behind the court's decision to exclude certain expert testimony, or review the full evidentiary basis for the court's factual findings.

In its March 1, 2021 minute order denying the new trial motion, the court found that appellant's motion misrepresented the oral record. Additionally, the court noted it "does not believe there are errors justifying a new trial."

Given the deferential standard of review and the limitations imposed by the lack of a reporter's transcript, we cannot conclude the trial court abused its discretion in denying the motion for a new trial. The findings that appellant misrepresented the oral record and that his expert was properly excluded are entitled to deference, particularly in the absence of a transcript that could possibly contradict these findings. The trial court's determination that any excluded evidence would not have affected the result further supports its decision to deny a new trial.

Appellant has not met his burden of affirmatively demonstrating error on appeal, and we find no abuse of discretion in the denial of the motion for a new trial.

## VI. Award of costs and attorney fees

The trial court's exercise of discretion in granting or denying a motion to tax costs will not be disturbed if substantial evidence supports its decision. (*Chaaban v. Wet Seal, Inc.* (2012) 203 Cal.App.4th 49, 52.) When the statute grants discretion in allowing or denying costs or in determining amounts, we reverse only if there has been a clear abuse of discretion and a miscarriage of justice. (*Ibid.*) Interpreting a statute is a matter of law that is reviewed de novo. (*Ibid.*)

### A. *Respondent was the prevailing party*

Appellant argues respondent was not the prevailing party for the purpose of costs because appellant prevailed on some causes of action. Code of Civil Procedure section 1032, subdivision (a)(4) defines prevailing party as including the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant. The trial court found respondent to be the prevailing party, noting she obtained a net monetary recovery and the principal equitable relief she sought. Since respondent obtained a net monetary recovery and findings and an injunction supporting her claim that the easement was for ingress and egress and prohibited appellant from parking on it, there is no abuse of discretion in finding respondent to be the prevailing party under Code of Civil Procedure section 1032, subdivision (a)(4).

22

Further, in its April 23, 2021 order, the trial court reviewed the claimed costs and reduced the award from the requested $61,855 to $29,707.75. Substantial evidence supports the amount of the court's award.

**B.** *The award of attorney fees was reasonable*

Code of Civil Procedure section 1021.5 specifies that a trial court may award attorney fees to the successful party "in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

Appellant argues respondent was not entitled to fees under Code of Civil Procedure section 1021.5 because the litigation did not result in the enforcement of an important right affecting the public interest or confer a significant benefit on the general public. The trial court's July 30, 2021 order found respondent's action resulted in a public benefit by enforcing the fire lane, which justified fees under Code of Civil Procedure section 1021.5.

The trial court's finding was reasonable because respondent successfully protected unobstructed emergency vehicle access through the enforcement of a fire lane designation. The court's decision benefits the litigants and the broader community by ensuring continued emergency access. Private enforcement was necessary to uphold the fire lane designation, with the financial burden justifying the award of attorney fees, as public authorities were not actively involved in the ongoing enforcement.

The trial court conducted a thorough analysis of the claimed fees, significantly reducing them based on various factors, including the partial success of appellant's claims. Substantial evidence, therefore, supports the amount and the court's finding of a public benefit from the enforcement of the fire lane as reasonable under the relevant statute.

Applying the deferential abuse of discretion standard, we find no basis to disturb these rulings. Moreover, the court's review and significant reduction of both the costs and fees demonstrate a considered exercise of discretion, not an arbitrary or capricious decision. The orders are affirmed.

## VII. Conclusion

We find no reversible error in the trial court's rulings. Appellant has identified no error in the order sustaining the demurrer to the first and third causes of action in his cross-complaint, and any potential error was rendered harmless by the subsequent trial on the merits. The grant of summary adjudication was proper based on the evidence presented.

The judgment following trial is supported by substantial evidence, and appellant has not demonstrated any legal error in the court's interpretation of the easement rights, the validity of the fire lane, or his claim of prescriptive rights. The court's evidentiary rulings, including the exclusion of appellant's expert witness, and its factual findings are entitled to deference, particularly given the lack of a reporter's transcript. The injunctive relief granted was well within the court's equitable powers and reasonably tailored to the circumstances of the case.

The denial of the new trial motion and the awards of costs and attorney fees were within the court's discretion. We find no

abuse of that discretion in the court's determination respondent was the prevailing party entitled to costs and fees.

We lack jurisdiction to review the denial of appellant's anti-SLAPP motion and the order imposing sanctions, as the time to appeal these orders had expired long before this appeal was filed. The denial of appellant's motion for reconsideration is not an appealable order.

## DISPOSITION

The judgment and orders of the trial court are affirmed. Respondent is awarded her costs on appeal.

_____
CHAVEZ, J.

We concur:

_____
LUI, P. J.

_____
HOFFSTADT, J.

25